Amy P. Lally (SBN 198555)
alally@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: (310) 595-9662
Facsimile: (310) 595-9501

Ian M. Ross (admitted *pro hac vice*)
iross@sidley.com
SIDLEY AUSTIN LLP
1001 Brickell Bay Drive, Suite 900
Miami, FL 33131
Telephone: (305) 391-5218
Facsimile: (305) 391-5101

*Attorneys for Defendant*
*Grow Care, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JANE DOE 1 and JANE DOE 2, individually and on behalf of all other persons similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GROW CARE, INC.,<br><br>Defendant. | Case No. 5:24-cv-09122-BLF<br>Assigned to: Hon. Beth Labson Freeman<br><br>**DEFENDANT GROW CARE, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**<br><br>Date: May 15, 2025<br>Time: 9:00 a.m.<br>Place: Courtroom 3, 5th Floor<br><br>Action Filed: December 17, 2024<br>Trial Date: Not set |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on May 15, 2025 at 9:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 3, 5th Floor of San Jose Courthouse, 280 South 1st Street, San Jose, CA 95113, Defendant Grow Care, Inc. ("Grow Care"), shall and hereby does move to dismiss Plaintiff Jane Doe 1 and Plaintiff Jane Doe 2's (collectively, "Plaintiffs") Class Action Complaint (the "Complaint") pursuant to 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, and such other matters as the Court may consider.

## STATEMENT OF ISSUES PRESENTED

1. Whether the Complaint should be dismissed under Rule 12(b)(2) for lack of personal jurisdiction.

2. Whether Plaintiffs' claim under the Electronic Communications Privacy Act must be dismissed under Rule 12(b)(6) for failure to plausibly state a claim.

3. Whether Plaintiffs' claim under the California Invasion of Privacy Act must be dismissed under Rule 12(b)(6) for failure to plausibly state a claim.

4. Whether Plaintiffs' claim under the California Confidentiality of Medical Information Act must be dismissed under Rule 12(b)(6) for failure to plausibly state a claim.

5. Whether Plaintiffs' claim for Invasion of Privacy Under California's Constitution must be dismissed under Rule 12(b)(6) for failure to plausibly state a claim.

6. Whether Plaintiffs' claim for intrusion upon seclusion must be dismissed under Rule 12(b)(6) for failure to plausibly state a claim.

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. FACTUAL ALLEGATIONS ..... 2

III. LEGAL STANDARD ..... 3

IV. ARGUMENT ..... 4

A. The Court Lacks Personal Jurisdiction Over Grow Care. ..... 4

1. There Is No General Jurisdiction Over Grow Care in California. ..... 4

2. There Is No Specific Jurisdiction Over Grow Care in California. ..... 5

a. There is No Purposeful Direction Toward California. ..... 5

i. None of Grow Care's Alleged Acts Were "Expressly Aimed" at California. ..... 5

ii. Grow Care's Alleged Actions Did Not Cause Harm That Grow Care Knew Was Likely to be Suffered in California. ..... 8

b. Plaintiffs' Claims Do Not Arise Out Of Or Relate To Grow Care's Forum-Related Activities. ..... 8

c. Subjecting Grow Care to Jurisdiction in California Would Be Unreasonable. ..... 10

B. Plaintiffs' Complaint Should Be Dismissed Because It Fails to Plead a Plausible Claim for Relief ..... 11

1. Plaintiffs' Claims Under the Electronic Communications Privacy Act ("ECPA") and the California Invasion of Privacy Act ("CIPA") (Counts I and II) (the "Wiretap Claims") Must Be Dismissed. ..... 12

2. Plaintiffs' Claim for Violation of the California Confidentiality of Medical Information Act ("CMIA") (Count III) Should Be Dismissed. ..... 15

3. Plaintiffs' Invasion of Privacy Claims (Counts IV & V) Should Be Dismissed. ..... 17

V. CONCLUSION ..... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AMA Multimedia, LLC v. Wanat*,
970 F.3d 1201 (9th Cir. 2020) ....................5, 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................3

*In re Auto. Antitrust Cases I & II*,
135 Cal. App. 4th 100 (2005) ....................9

*Ayer v. White*,
No. 21-cv-08773, 2022 WL 657502 (C.D. Cal. Mar. 4, 2022)....................9

*Ayla, LLC v. Alya Skin Pty. Ltd.*,
11 F.4th 972 (9th Cir. 2021) ....................10

*Barbour v. John Muir Health*,
No. C22-01693, 2023 WL 2618967 (Cal. Super. Ct. Jan. 5, 2023)....................16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................3

*Bellumini v. Citigroup, Inc.*,
No. cv-13-01743-CRB, 2013 WL 3855589 (N.D. Cal. July 24, 2013)....................17

*Brand v. Menlove Dodge*,
796 F.2d 1070 (9th Cir. 1986) ....................5

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ....................13

*Caruth v. Int'l Psychoanalytical Ass'n*,
59 F.3d 126 (9th Cir. 1995) ....................11

*Cole v. Quest Diagnostics, Inc.*,
No. 2:23-cv-20647-WJM, 2022 WL 88703 (D.N.J. Jan. 14, 2025) ....................14

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023)....................16

*Cybersell, Inc. v. Cybersell, Inc.*,
130 F.3d 414 (9th Cir. 1997) ....................5

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)....................4, 9

*Doctor's Fin. Network, Inc. v. DrDisabilityQuotes.com, LLC*,
No. 20-02034-CJC(JDEx), 2022 WL 19404853 (C.D. Cal. Mar. 3, 2022) ... 6, 8

*Doe v. Amgen Inc.*,
No. 2:23-cv-07448-MCS-SSC, 2024 WL 575248 (C.D. Cal. Jan. 29, 2024) ... 18

*Doe v. FullStory, Inc.*,
No. 23-CV-00059, 2024 WL 188101 (N.D. Cal. Jan. 17, 2024) ... 7

*Eisenhower Med. Ctr. v. Superior Court*,
172 Cal. Rptr. 3d 165 (Cal. App. 4th Dist. 2014) ... 16

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*,
592 U.S. 351 (2021) ... 9

*Garcia v. Build.com, Inc.*,
No. 22-cv-01985-DMS-KSC, 2023 WL 4535531 (S.D. Cal. July 13, 2023) ... 17

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) ... 4

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ... 13, 19

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ... 17

*Hammerling v. Google LLC*,
No. 21-CV-09004-CRB, 2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) ... 15

*Hammerling v. Google, LLC*,
No. 22-17024, 2024 WL 937247 (9th Cir. Mar. 5, 2024) ... 19

*Handsome Music, LLC v. Etoro USA LLC*,
No. 20-08059-VAP, 2020 WL 8455111 (C.D. Cal. Dec. 17, 2020) ... 6

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) ... 18

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
72 F.4th 1085 (9th Cir. 2023) ... 6

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) ... 19

*Katz-Lacabe v. Oracle Am., Inc.*,
No. 22-cv-04792-RS, 2023 WL 2838118 (N.D. Cal. 2023) ... 12

*Kauffman v. Home Depot, Inc.*,
No. 23-CV-0259, 2024 WL 221434 (S.D. Cal. Jan. 19, 2024) ... 7, 10

*Kurowski v. Rush Sys. for Health*,
No. 22 C 5380, 2023 WL 2349606 (N.D. Ill. Mar. 3, 2023) ........................................14

*Licea v. Am. Eagle Outfitters, Inc.*,
No. EDCV-22-1702MWF, 2023 WL 2469630 (C.D. Cal. Mar. 7, 2023) ........................12

*Licea v. Caraway Home Inc.*,
No. ED-CV-221791, 2023 WL 1999496 (C.D. Cal. Feb. 9, 2023) ...............................10

*LNS Enters. LLC v. Cont'l Motors, Inc.*,
22 F.4th 852 (9th Cir. 2022) ..............................................................................5

*Low v. Linkedin Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .............................................................18

*Martin v. Outdoor Network LLC*,
No. 23-cv-09807, 2024 WL 661173 (C.D. Cal. Jan. 31, 2024) ..........................6, 7, 10

*Massie v. Gen. Motors Co.*,
No. 1:20-cv-01560, 2021 WL 2142728 (E.D. Cal. May 26, 2021) ..........................7, 8

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
647 F.3d 1218 (9th Cir. 2011) ..............................................................................4

*Mikulsky v. Bloomingdale's LLC*,
No. 3:23-CV-00425-L-VET, 2024 WL 3091395 (S.D. Cal. May 14, 2024)....................14

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023).............................................................7, 10

*Moledina v. Marriott Int'l, Inc.*,
635 F. Supp. 3d 941 (C.D. Cal. 2022) ..................................................................8

*Moore v. Rodriguez*,
No. 20-cv-01481-BAS, 2021 WL 2222590 (S.D. Cal. June 2, 2021) ..........................19

*Norwest Mortg., Inc. v. Superior Court*,
72 Cal. App. 4th 214 (1999) ...............................................................................19

*Ove v. Gwinn*,
264 F.3d 817 (9th Cir. 2001) ................................................................................3

*Ranza v. Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015) ..............................................................................9

*Regents of Univ. of Cal. v. Superior Court*,
220 Cal. App. 4th 549 (2013) ..............................................................................16

*Rivelli v. Hemm*,
67 Cal. App. 5th 380 (2021) ................................................................................9

*Rodriguez v. Google LLC*,
No. 20-CV-04688-RS, 2021 WL 2026726 (N.D. Cal. May 21, 2021).........................................13

*Sacco v. Mouseflow, Inc.*,
No. 220-CV-02330, 2022 WL 4663361 (E.D. Cal. Sept. 30, 2022) .............................................7

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) .........................................................................................7

*San Diego Cty. Credit Union v. Citizens Equity First Credit Union*,
60 F.4th 481 (9th Cir.), *opinion amended and superseded on denial of reh'g*,
65 F.4th 1012 (9th Cir. 2023) ...................................................................................................1, 5

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ...................................................................................................5, 8

*Sinatra v. Nat'l Enquirer, Inc.*,
854 F.2d 1191 (9th Cir. 1988) .....................................................................................................10

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) ....................................................................................12, 18

*Sullivan v. Oracle Corp.*,
51 Cal. 4th 1191 (2011) ..............................................................................................................15

*Sutter Health v. Superior Court*,
227 Cal. App. 4th 1556 (2014) ...................................................................................................17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007).......................................................................................................................2

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015) .......................................................................................................13

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) .......................................................................................................19

*Vartanian v. VW Credit, Inc.*,
No. 2:11-cv-10776-SVW-RZ, 2012 WL 12326334 (C.D. Cal. Feb. 22, 2012) ...........................14

*Vigil v. Muir Med. Grp. IPA, Inc.*,
84 Cal. App. 5th 197 (2022) ........................................................................................................16

*Wilson v. Rater8, LLC*,
No. 20-CV-1515-DMS-LL, 2021 WL 4865930 (S.D. Cal. Oct. 18, 2021)..................................16

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ...........................................................................................12

**Statutes & Rules**

18 U.S.C.A. § 2510(8) ....................13

18 U.S.C. §§ 2510(1), (4), (8)....................13

18 U.S.C. § 2510, *et seq.* (Fed. Wiretap Act) .................... *passim*

18 U.S.C. § 2511 ....................12

18 U.S.C. § 2511(2)(d) ....................12

Cal. Civ. Code § 56.05(j) ....................16

Cal. Civ. Code §56.05(m) ....................15, 16

Cal. Civ. Code § 56.10 (Cal. Confidentiality of Medical Information Act) .................... *passim*

Cal. Civ. Code § 56.10(a) ....................15

Cal. Civ. Code § 56.36....................16

Cal. Pen. Code § 630....................15

Cal. Pen. Code § 631 (Cal. Invasion of Privacy Act) .................... *passim*

Cal. Pen. Code § 631(a) ....................12

Fed. R. Civ. P. 12(b)(2)....................1

Fed. R. Civ. P. 12(b)(6)....................1, 3

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendant Grow Care, Inc. ("Grow Care" or "Defendant") respectfully submits this Memorandum of Points and Authorities in support of its Motion to Dismiss ("Motion") Plaintiff Jane Doe 1 and Plaintiff Jane Doe 2's (collectively, "Plaintiffs") Class Action Complaint (the "Complaint" or "Compl.").

## I. INTRODUCTION

This putative class action is one of many filed in the last year based on the alleged presence of commonly used (and, in cases like this one, fully disclosed) website tools on company websites. The Complaint alleges that Grow Care, a platform for finding therapists, "integrated and embedded" website tools (the "Tools") from third-party service providers into its website, growtherapy.com (the "Website"). Compl. ¶¶ 1, 13. According to Plaintiffs, the Tools allowed third-party service providers to "unlawfully intercept" Plaintiffs' personal information "including information regarding the type of mental health treatment [they were] seeking, along with [] personally identifiable information such as [their] insurance member ID number[s], full legal name[s], phone number[s], and email address[s]." *Id*. ¶¶ 13, 17. Plaintiffs claim that the alleged disclosures violate privacy laws and statutes.

Plaintiffs' Complaint is deficient in the following respects, each of which independently requires dismissal pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6):

*First*, Plaintiffs fail to demonstrate a basis for the Court to assert personal jurisdiction over Grow Care. Plaintiffs' allegations concede that there is no general jurisdiction here, as Grow Care is neither incorporated in nor has its principal place of business in California. Compl. ¶ 19. The Complaint fails to describe any business operations in California, let alone operations so continuous and systematic as to give rise to general jurisdiction. Likewise, Plaintiffs cannot show specific jurisdiction because Plaintiffs cannot meet their burden to show that the allegations arise out of conduct that Grow Care purposefully directed at California. In fact, Courts have rejected theories of personal jurisdiction that are materially indistinguishable from the ones advanced by Plaintiffs here.

*Second*, the Complaint should also be dismissed because Plaintiffs fail to plausibly allege facts sufficient to satisfy the elements of each of their claims. As set forth below, the Complaint presents statutory causes of action that plainly do not apply to the alleged conduct. Nearly all of Plaintiffs'

claims require Plaintiffs to establish that Grow Care invaded their privacy with respect to sensitive medical information or communications (or otherwise engaged in "highly offensive" conduct) but the Complaint fails to plead any facts showing anything more than the routine use of standard website marketing tools in ways that were permissible under applicable legal and regulatory requirements, including HIPAA and CMIA. Further, the Complaint pleads multiple claims under California law on behalf of the nationwide class, without offering any basis for the application of California law to out-of-state defendants for conduct that did not occur in California.

The Court should thus dismiss the Complaint in its entirety, with prejudice.

## II. FACTUAL ALLEGATIONS

Grow Care is incorporated in Delaware and has its principal place of business in New York. Compl. ¶ 19. Grow Care operates Grow Therapy, a platform that allows clients seeking a therapist to make and manage appointments through the Website. Compl. ¶ 27. Every page of the Website includes a conspicuous link to Grow Care's privacy policies and notice of privacy practices (the "Privacy Notices"). *See* Grow Therapy, *Privacy Notice*, https://growtherapy.com/legal/privacy-policies/ and *Notice of Privacy Practices*, https://growtherapy.com/legal/notice-of-privacy-practices/. Among other things, the Privacy Notices disclose that Grow Care may "share, transmit, disclose, grant access to, make available, and provide personal information with and to third parties." https://growtherapy.com/legal/privacy-policies/. The notice expressly states that Grow Care and its "third-party providers[] automatically collect information [users] provide to [Grow Care] and information about how [users] access and use" the Website. *Id*. And the Privacy Notices make clear that personal information may be used for treatment and health care operations purposes, as permitted under HIPAA. *See* https://growtherapy.com/legal/notice-of-privacy-practices/. Because Grow Care's website is referenced throughout the Complaint, including partial screenshots of pages that (in full) include the link to Grow Care's Privacy Notices, *see, e.g.,* Compl. ¶¶ 73-80, it may be considered on a motion to dismiss. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

Plaintiffs are California residents who allege that they voluntarily used the Website to book therapy appointments. Compl. ¶¶ 12, 17. The Complaint does not allege whether Plaintiffs actually booked appointments for themselves or in fact attended these appointments. When using the Website,

Plaintiffs claim that they disclosed their medical insurance providers, medical insurance member identification numbers, full legal names, phone numbers, and email addresses, as well as their preference for therapists who specialize in care for anxiety and depression. *Id*. According to Plaintiffs, Grow Care "integrated and embedded" Tools from the Datadog, Inc., Twilio, Inc., and Wingify Software Pvt. Ltd. (collectively, the "Third-Party Service Providers") into the Website that allowed the Third-Party Service Providers to "unlawfully intercept" Plaintiffs' "actions on the Website," including "mouse movements," "clicks, scrolls, typing, and other input data," Compl. ¶¶ 28, 39, 56, 64. However, these allegations are based solely on a hypothetical user's use of the Website as reflected in screenshots in the Complaint. Compl. ¶¶ 73-84. Plaintiffs do not provide any allegations showing that these technologies were on the Website while they used it, or that they purportedly intercepted any of their data.

Based on these allegations, Plaintiffs allege five causes of action against Grow Care: violation of the Federal Wiretap Act, 18 U.S.C. § 2510, *et seq.*; violation of the California Invasion of Privacy Act, Cal. Pen. Code § 631; violation of the California Confidentiality of Medical Information Act, Cal. Civ. Code § 56.10 ("CMIA"); Invasion of Privacy under California's Constitution; and Intrusion Upon Seclusion. *Id.* ¶ 7. Plaintiffs seek to represent a nationwide class to each of their claims other than their claim under CMIA, *id*. ¶ 89, in which they seek to represent a subclass consisting of class members whose personal information was improperly disclosed to Third-Party Service Providers "as a result of using the Website while located in California." *Id.* at ¶ 90.

## III. LEGAL STANDARD

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The facts alleged must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Ove v. Gwinn*, 264 F.3d 817, 821 (9th Cir. 2001); *see also Iqbal*, 556 U.S. at 678 (pleading cannot rely on "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertion[s]' devoid of 'further factual enhancement'").

## IV. ARGUMENT

### A. The Court Lacks Personal Jurisdiction Over Grow Care.

"Exercises of personal jurisdiction" are limited "by due process constraints on the assertion of adjudicatory authority." *Daimler AG v. Bauman*, 571 U.S. 117, 121–122 (2014). Federal courts "follow state law in determining the bounds of their jurisdiction over persons." *Id*. at 125 (citing Fed. R. Civ. P. 4(k)(1)(A)). Thus, federal due process and the law of the forum State set the limits for this Court's exercise of personal jurisdiction—a single inquiry here, since "California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution." *Id.* at 117. Plaintiffs, as the party seeking to invoke personal jurisdiction, bear the burden of establishing that jurisdiction exists. *See*, *e.g.*, *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

Based on the allegations in the Complaint, there is neither general nor specific personal jurisdiction over Grow Care. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). This Court lacks general jurisdiction over Grow Care because California is not Grow Care's place of incorporation or principal place of business. And this Court lacks specific jurisdiction over Grow Care because Plaintiffs' claims do not arise out of or relate to acts that Grow Care purposefully directed toward California, and exercising specific jurisdiction would not be reasonable under due process principles. The Complaint should therefore be dismissed again for lack of personal jurisdiction.

#### 1. There Is No General Jurisdiction Over Grow Care in California.

General jurisdiction exists only where a defendant is "essentially at home." *Goodyear*, 564 U.S. at 919. For "a corporation, the place of incorporation and principal place of business" are the paradigmatic forums. *Daimler AG*, 571 U.S. at 137. Otherwise, to be subject to general jurisdiction, a corporation's contacts must be "so 'continuous and systematic' as to render [them] essentially at home in the forum State," which could only occur in an "exceptional case." *Id.* at 139 & n.19.

The Complaint pleads no basis to find general jurisdiction over Grow Care. As Plaintiffs allege, Grow Care is incorporated in Delaware and has its principal place of business in New York. Compl. ¶ 19. Thus, the Court presumptively lacks general personal jurisdiction over Grow Care. Moreover,

Plaintiffs only allege that Grow Care is registered to conduct business in California—certainly, nothing to make Defendant "essentially at home" in California. *See id.* ¶ 9. This falls well short of the "exacting standard" for general jurisdiction outside the place of incorporation and principal place of business. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004); *see also Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986) (collecting cases denying general jurisdiction).

**2. There Is No Specific Jurisdiction Over Grow Care in California.**

"A defendant is subject to specific personal jurisdiction in the forum state if: (1) the defendant performed an act or consummated a transaction by which it purposely directed its activity toward the forum state; (2) the claims arose out of defendant's forum-related activities; and (3) the exercise of personal jurisdiction is reasonable." *San Diego Cty. Credit Union v. Citizens Equity First Credit Union*, 60 F.4th 481, 502 (9th Cir.), *opinion amended and superseded on denial of reh'g*, 65 F.4th 1012 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 190 (2023); *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 859 (9th Cir. 2022). "'If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law.'" *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1208 (9th Cir. 2020) (citation omitted). None of the three requirements are satisfied here.

**a. There is No Purposeful Direction Toward California.**

To satisfy the first requirement that Defendant purposefully directed its alleged action to the forum state, Plaintiffs must show that Defendant: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803. "All three parts of the test must be satisfied." *Id.* at 805. Plaintiffs cannot meet their burden.

**i. None of Grow Care's Alleged Acts Were "Expressly Aimed" at California.**

The Ninth Circuit has made clear that a "passive" website that simply hosts information "does not qualify as purposeful activity invoking the benefits and protections" of the law of that state. *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 420 (9th Cir. 1997). Likewise, even an interactive website that allows a party to watch media or purchase goods that occur in California from a national

website, without more, is not enough for specific jurisdiction. *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1092 (9th Cir. 2023). To demonstrate "express aiming" in such circumstances, the complaint's allegations must show that an operator of "a website 'with national viewership and scope appeals to, and profits from, an audience in a *particular state*.'" *AMA Multimedia*, 970 F.3d at, 1210 (quoting *Mavrix*, 647 F.3d at 1231) (emphasis added). Thus, if the website itself is the "*only* jurisdiction contact" relevant to a specific jurisdiction analysis, the analysis "turns on whether the site had a forum-specific focus or the defendant exhibited an intent to cultivate an audience in the forum." *Herbal Brands, Inc.*, 72 F.4th at 1092 (emphasis in original).

A "forum-specific" focus or intent to cultivate a forum-specific audience requires a showing that the website specifically "targeted California users through the website's content." *AMA Multimedia*, 970 F.3d at 1211 n.7. A plaintiff cannot demonstrate a "forum-specific focus" by alleging that the website uses geolocation software or allows visitors, via a drop-down menu or selection screen, to select content from a specific state. *Doctor's Fin. Network, Inc. v. DrDisabilityQuotes.com, LLC*, No. 20-02034-CJC(JDEx), 2022 WL 19404853, at *5 (C.D. Cal. Mar. 3, 2022) ("[T]he Court is not convinced that allowing a user to select which state it would like to search for insurance products is enough to confer specific jurisdiction in a state. . . ."); *Handsome Music, LLC v. Etoro USA LLC*, No. 20-08059-VAP (JCx), 2020 WL 8455111, at * (C.D. Cal. Dec. 17, 2020) ("Plaintiff proffers no evidence to show Defendant posts and profits from California-specific advertisements on its website."). Indeed, courts have recognized that such allegations, if accepted as sufficient for specific jurisdiction, would impermissibly "make Defendant subject to specific jurisdiction in every state it allows its users to choose from" on the website. *Doctor's Fin. Network*, 2022 WL 19404853, at *5 (no specific jurisdiction where "Defendant has done nothing to encourage California residents to visit its website over any other state's visitors").

Here, Plaintiffs have failed to plead facts showing that Grow Care expressly aims its website or its activities at California. As an initial matter, Plaintiffs' allegation that Grow Care is registered to conduct business in California has nothing to do with their claim. *Martin v. Outdoor Network LLC*, No. 23-cv-09807, 2024 WL 661173, at *5 (C.D. Cal. Jan. 31, 2024) ("Insofar as Plaintiff suggests that Defendant's *overall sales* to California establish express aiming, that argument is unavailing because

a sale is not the intentional act from which Plaintiff's claims here arose.") (emphasis in original). And most importantly, the only jurisdictional contact Plaintiffs allege relevant to their specific claims is *their* access of the Website—which they do not even allege occurred in California. *See*, *e.g.*, Compl. ¶¶ 12, 16.

Courts in this circuit have already clearly held that a website is not "express[ly] aim[ed]" at a specific location where, like here, the purported "harm would have befallen the plaintiff[s] no matter [their] location." *Sacco v. Mouseflow, Inc*., No. 220-CV-02330, 2022 WL 4663361, at *4-5 (E.D. Cal. Sept. 30, 2022) (dismissing CIPA claims for lack of personal jurisdiction). Because the alleged "recording of Plaintiff[s'] visit to [the Website] and the collection of [their] [data] would have happened no matter the state Plaintiff[s] w[ere] in. Defendant did nothing specifically directed at California or California residents to tether [its Website] to this forum." *Id.* at *5; *see also Doe v. FullStory, Inc.*, No. 23-CV-00059, 2024 WL 188101, at *11 (N.D. Cal. Jan. 17, 2024) (dismissing privacy claims where "something more" was needed in assessing whether a data processing company directed its activity toward California); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 513 (C.D. Cal. 2021) (operation of a commercial website accessible to California residents was not conduct expressly aimed at California); *Martin*, 2024 WL 661173, at *4 (no express aiming when "the website is the sole jurisdictional contact with Plaintiff's claims"); *Mikulsky v. Noom, Inc*., 682 F. Supp. 3d 855, 868 (S.D. Cal. 2023) (no personal jurisdiction when complaint "fails to include a single allegation detailing how Defendant's 'interactive website' is targeted at California"); *Kauffman v. Home Depot, Inc.*, No. 23-CV-0259, 2024 WL 221434, at *1 (S.D. Cal. Jan. 19, 2024) (no personal jurisdiction based on data tracking through defendant's website).

*Massie v. General Motors Co*. is instructive here. No. 1:20-cv-01560, 2021 WL 2142728 (E.D. Cal. May 26, 2021). In *Massie*, plaintiffs brought a putative class action asserting CIPA and Federal Wiretap Act claims based on the alleged collection of website visitors' "mouse clicks, keystrokes, names, zip codes, phone numbers, email addresses, IP addresses, and locations" with software embedded on the defendant's website. *Id*. at *1. The *Massie* plaintiffs were California residents located in California when they visited GM's "nationally accessible" website. *Id*. As in *Massie*, Grow Care's Website "lack[s] a forum specific focus as the market for [Defendant's platform] is nationwide." *Id*.

at *5. And just as in *Massie*, Grow Care's alleged use of software to collect website users' data is not "designed specifically to target and attract Californians" to the Website or its services; the "software at issue [allegedly] records . . . website sessions from users nationwide; no geographic criteria affect which website sessions the software captures." *Massie*, 2021 WL 2142728, at *4; *see also Moledina v. Marriott Int'l, Inc*. 635 F. Supp. 3d 941, 948 (C.D. Cal. 2022) (dismissing CIPA case for lack of personal jurisdiction where plaintiff called a Marriott hotel in Texas from California, and Marriott allegedly recorded the call); *Doctor's Fin. Network*, 2022 WL 19404853, at *5 ("Based on the allegations of the Complaint, Defendant treats visitors in California the same as it does those in Florida, Georgia, Rhode Island, and the rest of the remaining states.").

Plaintiffs have "thus failed to meet [their] burden to show that [Grow Care] purposefully directed its conduct at California," and Grow Care "is not subject to this Court's personal jurisdiction." *Moledina*, 635 F. Supp. 3d at 950.

**ii. Grow Care's Alleged Actions Did Not Cause Harm That Grow Care Knew Was Likely to be Suffered in California.**

Similarly, Plaintiffs cannot show that Grow Care's alleged conduct caused them an injury that Grow Care knew was "likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803. Again, the only connection between Grow Care's alleged conduct and California is Plaintiffs' claim that they are California residents. As the Ninth Circuit has explained, even where a defendant's "intentional act eventually caused harm to [the plaintiffs] in California, and [the defendant] may have known that [the plaintiffs] lived in California," "this does not confer jurisdiction" where the defendant did not aim its acts at the forum state. *Id*. at 807; *see also Moledina,* 635 F. Supp. 3d at 949 (the mere fact that defendant "knew, or at least reasonably should have known, [they] w[ere] calling from California … during the time of the call" did not confer specific jurisdiction). Plaintiffs therefore cannot show that Grow Care knew harm was likely to be suffered by Plaintiffs in California, as they must.

**b. Plaintiffs' Claims Do Not Arise Out Of Or Relate To Grow Care's Forum-Related Activities.**

For similar reasons, Plaintiffs' claims do not arise out of or relate to Grow Care's contacts with

California. This requirement "'depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum [State] and is therefore subject to the [State's] regulation.'" *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (citations omitted). "There must be 'a connection between the forum and the specific claims at issue.'" *Rivelli v. Hemm*, 67 Cal. App. 5th 380, 399 (2021) (quoting *Bristol-Myers Squibb*, 582 U.S. at 260). "If the operative facts of the allegations of the complaint do not relate to the [defendant's] contacts in this state, then the cause of action does not arise from that contact such that California courts may exercise specific jurisdiction." *In re Auto. Antitrust Cases I & II*, 135 Cal. App. 4th 100, 116 (2005).

Again, Plaintiffs deliberately and unilaterally accessed the Website. Their claim does not "arise out of contacts that the 'defendant *himself*' create[d] with the forum State." *Walden*, 571 U.S. at 284. Nothing about Plaintiffs' allegations relating to the data allegedly collected from the Website, of Grow Care's purported use of third-party Tools on the Website, is alleged to have anything to do with Grow Care's purported contacts with California. As explained *supra*, the Grow Care Website is accessible from anywhere. Whether or not Plaintiffs were in California when they visited the Website, their location at the time of access says nothing about Grow Care's activities within that city, state, or country. *See, e.g., id*. at 290 (where alleged injury could have occurred in "California, Mississippi, or wherever else [petitioner] might have traveled," the "effects of petitioner's conduct [were not] connected to the forum State in a way that makes those effects a proper basis for jurisdiction"); *Ayer v. White*, No. 21-cv-08773, 2022 WL 657502, at *5 (C.D. Cal. Mar. 4, 2022) ("Plaintiffs' injuries do not aid their jurisdictional argument because Plaintiffs would have suffered the same loss in any state they happened to be in at the time Defendants committed their alleged misconduct in Texas."). If the state of residence of an internet-user alone sufficed to confer jurisdiction, it would result in absurd results where Grow Care could be sued in any state just because a plaintiff accessed the Website from there. That rule would not "adequately protect defendants foreign to a forum." *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court,* 592 U.S. 351, 362 (2021).

The *Kauffman* decision is helpful here. No. 23-CV-0259, 2024 WL 221434, at *1. In *Kauffman*, allegations that Home Depot extracted plaintiff's data when he "made some purchases" of products on Home Depot's website failed to satisfy this prong. Even though Home Depot operates

retail locations throughout California, the court rejected plaintiff's argument that the data capture played a "critical part" in Home Depot's "coordinated efforts to maximize sales revenue in California." *Id*. at 3. Here, too, there is only a tenuous connection between Plaintiffs' claim and Grow Care's commercial activity in California. "Plaintiff[s] therefore cannot allege any facts that [their] claims 'arise out of or relate to' [Grow Care's]' conduct in California." *Mikulsky*, 682 F. Supp. 3d at 868; *Licea v. Caraway Home Inc*., No. ED-CV-221791, 2023 WL 1999496, at *9 (C.D. Cal. Feb. 9, 2023) (no personal jurisdiction for CIPA claims based on plaintiff's access of a website in California).

**c. Subjecting Grow Care to Jurisdiction in California Would Be Unreasonable.**

Plaintiffs' Complaint should be dismissed for the independent reason "that the exercise of jurisdiction would be unreasonable and therefore violate due process." *Ayla, LLC v. Alya Skin Pty. Ltd*., 11 F.4th 972, 983–84 (9th Cir. 2021). This inquiry is "guided by seven factors: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Id.* (citation and quotation omitted). These factors weigh against jurisdiction over Grow Care.

First, the inquiry concerning the extent of a defendant's purposeful interjection is "analogous to the purposeful direction" analysis. *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988). The operation of an interactive website does not rise to the level of purposeful interjection into the forum state's affairs. *See supra* at 5-6 (Ninth Circuit precedent makes clear that national websites often are not subject to specific jurisdiction). Accordingly, this factor weighs against exercising jurisdiction. *See Martin*, 2024 WL 661173, at *5 (dismissing case for lack of personal jurisdiction).

Second, litigating in California would impose an unreasonable burden on Grow Care. Grow Care is a Delaware corporation with its principal place of business located in New York. It should not be required to litigate a case across the country where Plaintiffs have not alleged anything other than their California residencies. Thus, this factor weighs against exercising jurisdiction.

Third, claims against Grow Care should be heard by a court where Grow Care is a corporate citizen when, as here, the claims do not arise out of its contacts with any other State. That is the essence of having forums where businesses are fundamentally at home and can thus have any claims heard against them. Therefore, this factor does not support exercising jurisdiction.

Fourth, although some of Plaintiffs' claims are based on California law, there is otherwise no relationship to California except that Plaintiffs live here, which does not favor jurisdiction.

Fifth, the most efficient judicial resolution of the controversy would not be in California. Any relevant records relating to Plaintiffs' allegations would be outside California. Moreover, common class questions such as those relating to Grow Care's policies and procedures, its Website and the services it provides, its relationships with third party service providers, and so forth, would be answered by witnesses and documents outside California. *See Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995) (the location of the evidence and witnesses is an important consideration in determining jurisdiction). Therefore, this factor does not favor jurisdiction.

Sixth, it is not unreasonably inconvenient to require Plaintiffs to litigate their claim in another forum, when none of the relevant information, documents, or witnesses (besides Plaintiffs themselves) are located in California.

Seventh, there exist multiple alternative forums for the dispute based on Plaintiffs' own allegations, so this factor also weighs against exercising jurisdiction.

On balance, the seven factors favor a finding that the exercise of jurisdiction over Grow Care would be unreasonable and therefore violate due process.

### B. Plaintiffs' Complaint Should Be Dismissed Because It Fails to Plead a Plausible Claim for Relief

Each of Plaintiffs' claims should be dismissed because (1) Plaintiffs fail to plead essential elements of those claims, (2) the statutes are plainly inapplicable to the conduct alleged here, or (3) they seek relief that is unavailable or impermissible.

**1. Plaintiffs' Claims Under the Electronic Communications Privacy Act ("ECPA") and the California Invasion of Privacy Act ("CIPA") (Counts I and II) (the "Wiretap Claims") Must Be Dismissed.**

Plaintiffs bring a claim under Title I of the ECPA, known as the Wiretap Act., Compl. ¶ 113, which is violated when any person "intentionally intercepts, endeavors to intercept, or procedures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511. Plaintiffs also plead a claim under CIPA, California's analogue to the Wiretap Act, which likewise makes it unlawful to "intentionally tap[], or make[] any unauthorized connection … or [] willfully and without the consent of all parties to the communication, or in any unauthorized manner, read[], or attempt[] to read, or to learn the contents or meaning of any message, report, or communication." Cal. Pen. Code § 631(a).

As an initial matter, Plaintiff's ECPA should be dismissed because it is a one-party consent statute, and Plaintiff's own allegations show that Grow Care consented to the purported interception by the third-party Tools. 18 U.S.C. § 2511(2)(d) (no liability where "one of the parties to the communication has given prior consent" to interception); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1028 (N.D. Cal. 2014) (ECPA "only requires one party to the communication to consent to an interception"). Because Plaintiffs' allegations, if accepted as true, claim that Grow Care was voluntarily using the Tools, liability under the ECPA is precluded. *See Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 955 (N.D. Cal. 2017) ("consent of one of the parties to the communication [is] sufficient to preclude liability under the Wiretap Act") (quotations omitted); *Licea v. Am. Eagle Outfitters, Inc.*, No. EDCV-22-1702MWF, 2023 WL 2469630, at *6 (C.D. Cal. Mar. 7, 2023).

Although there is a crime-tort exception to this provision under 18 U.S.C. § 2511(2)(d), Plaintiffs have failed to allege that Grow Care intended to commit a tort here, let alone that that "***the primary motivation or a determining factor*** in the [defendant's] actions has been to injury plaintiffs tortiously." *Katz-Lacabe v. Oracle Am., Inc.*, No. 22-cv-04792-RS, 2023 WL 2838118, at *10 (N.D. Cal. 2023) (emphasis added). Plaintiffs' conclusory allegation that the Defendant used the Tools "for the purpose of committing a tortious or criminal act" in insufficient to plausibly allege that Grow Care implemented the Tools with the ***primary motivation*** of committing torts on Website visitors. To the

contrary, the Complaint expressly (and repeatedly) states that the purpose of the Tools is to enhance Grow Care's "marketing," advertising," and "analytics efforts," Compl. ¶¶ 29, 47, 50, 51–52, 55, 59, 114, precluding application of the crime-tort exception. *See Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2021 WL 2026726, at *6 n.8 (N.D. Cal. May 21, 2021) (crime-tort exception does not apply to alleged interception by third-party internet applications when purpose is "plainly . . . to make money"). For this reason alone, Plaintiffs' claim under ECPA must be dismissed.

Plaintiffs' Wiretap Claims independently fail because the Complaint fails to plead the elements of a violation under ECPA or CIPA. Both statutes require a plaintiff to allege an (1) intentional (2) interception of (3) the contents of a communication. *See* 18 U.S.C. §§ 2510(1), (4), (8); Cal. Pen. Code § 631; *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110 (N.D. Cal. 2020) ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act.") (cleaned up) (citations omitted). The Wiretap Act defines "contents" as "information concerning the substance, purport, or meaning of that communication." 18 U.S.C.A. § 2510(8). "The contents of a communication under CIPA and the [] Wiretap Act are the same." *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) (quotation marks omitted).

First, Plaintiffs fail to plead allegations that any interception of Plaintiffs' data by third parties through the Tools was intentional. To plead intent, Plaintiffs must plead facts showing that Grow Care "acted consciously and deliberately" in supposedly allowing third parties to intercept communications. *United States v. Christensen*, 828 F.3d 763, 775 (9th Cir. 2015). Plaintiffs' allegations here directly undermine any inference of intent, as the Complaint alleges that the Tools are designed to record "user's experiences on the [Website]" or "web behavior," such as "mouse movements, scrolls, and clicks" and "checkout button click, tap, and more." *See* Compl. ¶¶ 30, 64, 69–70. Indeed, the Complaint expressly states that "Defendant has purposefully integrated and embedded Datadog's, Twilio's, and Wingify's software into its Website to track patients' *actions* on the Website." Compl. ¶ 27 (emphasis added); *see* ¶ 30 (alleging Datadog's Tool "[a]utomatically collect[s] … every … action during a user's session") ¶ 49; (alleging Twilio's Tool captures "a user's interaction"); ¶ 61 (alleging Wingify's Tool collects "website engagement or browsing and behavior data").

Plaintiffs have alleged only an intent to record browsing activity, which is non-actionable and

separate from "communications." *Mikulsky v. Bloomingdale's LLC*, No. 3:23-CV-00425-L-VET, 2024 WL 3091395, at *3 (S.D. Cal. May 14, 2024) (browsing activity such as "clicks, mouse movements, scrolling," and "key presses" are "record data, not 'communications'"). Thus, the Complaint fails "to set forth specific factual circumstances that make plausible [Grow Care's] intent to record a confidential communication." *Vartanian v. VW Credit, Inc.*, No. 2:11-cv-10776-SVW-RZ, 2012 WL 12326334, at *2 (C.D. Cal. Feb. 22, 2012).

Second, Plaintiffs fail to allege that any of the Tools alleged in the Complaint acted to eavesdrop or intercept the content of their communications. In fact, as another district court recently held in dismissing CIPA claims, Plaintiffs own allegations show that Plaintiffs' "browsers were communicating ***directly*** with the alleged eavesdropper because the users' browsers were sending [] requests directly to [third party's] servers." *Cole v. Quest Diagnostics, Inc.*, No. 2:23-cv-20647-WJM, 2022 WL 88703, at *2 (D.N.J. Jan. 14, 2025). Under these allegations, Plaintiffs' browsers were communicating directly with the purported eavesdroppers, and "'there [was] no need for the eavesdropper to acquire that information from transmissions to which they are not a party.'" *Id.* at *3 (quoting *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125 (3d Cir. 2015)) (cleaned up). Accordingly, Plaintiffs' allegations foreclose their argument that the Tools were intercepting the content of communications sent to some other intended party. *See id.* (granting motion for reconsideration and holding there was no CIPA liability for use of third party tools).

Third, based on Plaintiffs' alleged voluntary disclosure of personal information on the Website, Plaintiffs cannot allege that any of their information was "intercepted" via the Tools. Plaintiffs' Complaint makes clear that they voluntarily disclosed their medical insurance providers, medical insurance member identification numbers, full legal names, phone numbers, and email addresses, as well as their therapist preferences to Grow Care, and expected Grow Care to use this information. Compl. ¶¶ 12, 16. Plaintiffs also agreed, pursuant to Grow Care's Privacy Notices, that their information could be used for the purposes of treatment, payment, and health care operations. *See supra* at 2-3. Such allegations undermine claims that their personal information was improperly intercepted by third parties through their use of the Tools. *See Kurowski v. Rush Sys. for Health*, No. 22 C 5380, 2023 WL 2349606, at *4 (N.D. Ill. Mar. 3, 2023) ("The court concludes that [defendant] .

. . was the intended recipient of the allegedly intercepted communications here. [Defendant] is therefore a party to those communications and cannot be liable under the Wiretap Act for its alleged interception of them, if such an interception even occurred.").

Fourth, Plaintiffs' CIPA claim fails to the extent it is not limited to the subclass of putative class members who were located in California during the alleged disclosures. California law carries a presumption against extraterritorial application, meaning courts "presume the Legislature did not intend a statute to be operative, with respect to occurrences outside the state." *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011) (internal quotations omitted); *see* Cal. Penal Code § 630 (The purpose of CIPA is to "to protect the right of privacy of the people of *this state*.") (emphasis added). The Complaint establishes no basis for out-of-state plaintiffs to maintain a CIPA claim against Grow Care, a Delaware Corporation with its principal place of business in New York because the Complaint does not and cannot allege that any wrongful conduct occurred in California. Compl. ¶ 19. *See Hammerling v. Google LLC*, No. 21-CV-09004-CRB, 2022 WL 17365255, *11 (N.D. Cal. Dec. 1, 2022), *aff'd*, No. 22-17024, 2024 WL 937247 (9th Cir. Mar. 5, 2024) (dismissing CIPA claim because plaintiff failed to allege that the conduct at issue took place in California). Thus, the CIPA claim must be dismissed as to putative class members who did not access the Website in California.

For these reasons, the Wiretap Claims should be dismissed.

**2. Plaintiffs' Claim for Violation of the California Confidentiality of Medical Information Act ("CMIA") (Count III) Should Be Dismissed.**

Plaintiffs allege a claim for a violation of CMIA under Section 56.10 which states that "[a] provider of health care, health care service plan, or contractor shall not disclose medical information regarding a patient . . . without first obtaining an authorization." Cal. Civ. Code § 56.10(a). The CMIA claim is inadequately pled and must be dismissed.

First, Plaintiffs fail to plead that they are *patients* of Grow Care, let alone that any of their *patient* medical information was transmitted to third parties. If they are not patients, they do not have standing to bring a CMIA claim. Plaintiffs do not allege, for example, that they "received health care services from a provider of health care," nor is it clear that they could do so. *See* Cal Civ. Code §56.05(m). They simply allege that they went through Grow Therapy's booking flow. Moreover,

medical information under CMIA does not encompass "just any patient-related information." *Eisenhower Med. Ctr. v. Superior Court*, 172 Cal. Rptr. 3d 165, 169 (Cal. App. 4th Dist. 2014). Rather, medical information only includes individually identifiable information regarding a patient's medical history, mental or physical condition, or treatment. Cal. Civ. Code § 56.05(j). Although Plaintiffs allege that the information they purportedly disclosed in order to book a session (name, insurance information, preference for a provider's specialization) is personally identifying, none of that information reveals that Plaintiffs actually received the purported services they booked, let alone anything about their *patient* medical histories, mental or physical conditions, or treatments. If anything, it reveals only that Plaintiffs *scheduled* appointments with certain types of therapists—but under CMIA, that is not information showing that they actually "received health care services from a provider of health care." *See* Cal. Civ. Code §56.05(m); *see Wilson v. Rater8*, *LLC*, No. 20-CV-1515-DMS-LL, 2021 WL 4865930, at *4 (S.D. Cal. Oct. 18, 2021) (dismissing CMIA claim where, "[b]eyond the conclusory use of the words 'treating' and 'treatment,' [plaintiff] does not allege facts that would allow the Court to infer that he received medical treatment during that examination); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1123–24, 1128 (S.D. Cal. 2023) (web browsing activity related to plaintiffs' "search for medical specialists" is not medical information covered by CMIA).

Second, Plaintiffs fail to plead a "release" of protected information sufficient to satisfy the remedial provisions of CMIA, Cal. Civil Code § 56.36. *See* Compl. ¶¶ 25-26. CMIA only provides for remedies where information is actually released to, or viewed by, a third party. *Vigil v. Muir Med. Grp. IPA, Inc.*, 84 Cal. App. 5th 197, 215 (2022). Here, Plaintiffs simply allege that the purported Website tools can intercept data provided on the Website, but not that any of their information was actually released to and viewed by a third-party. *Barbour v. John Muir Health*, No. C22-01693, 2023 WL 2618967, at *7-8 (Cal. Super. Ct. Jan. 5, 2023) (finding that "the information may be collected, analyzed, and used … all through the use of computers, without any human actually laying eyes on it"). Accordingly, Plaintiffs cannot seek any relief under the remedial provisions of CMIA. *Vigil*, 84 Cal. App. 5th at 215; *see also Regents of Univ. of Cal. v. Superior Court*, 220 Cal. App. 4th 549, 564 (2013) ("Section 56.36 . . . requires pleading and proof that confidential information has been released in violation of CMIA to bring a private cause of action for nominal and/or actual damages").

Third, California courts have held that a plaintiff pleading a CMIA claim must allege facts showing that the defendant affirmatively intended to disclose the plaintiff's protected information to an unauthorized third party. *Sutter Health v. Superior Court*, 227 Cal. App. 4th 1556 (2014) (no CMIA claim where there was "no affirmative communicative act" to an undisclosed third party). Here, Plaintiffs' allegations fail to show that any of Plaintiffs' medical information was actually improperly disclosed to a third party, let alone that Grow Care affirmatively intended for the Tools—which Plaintiffs concede may be "customized" and configured to only disclose nonpersonal information (Compl, ¶¶ 36 n.14, 46, 66)—to improperly disclose protected information. Plaintiffs cannot seek liability where the purported disclosure was made to a service provider necessary to provide the services on the Website, and not to a third-party who intended to use the allegedly disclosed information for its own purposes. *See, e.g.*, *Garcia v. Build.com, Inc.*, No. 22-cv-01985-DMS-KSC, 2023 WL 4535531, at *6 (S.D. Cal. July 13, 2023) (allegations that "Defendant employs a third-party software service as a tool to record its own data" are insufficient to show an improper third-party disclosure). Accordingly, Plaintiffs' CMIA claim fails.

Fourth, Plaintiffs do not sufficiently allege a lack of consent for the alleged disclosures. Plaintiffs' conclusory allegations that they did not consent are implausible given that the Complaint conspicuously fails to mention Grow Care's Privacy Notices and allege whether Plaintiffs read it. *See generally* Compl. Indeed, *every* page of the website includes a link to Grow Care's Privacy Notices which fully discloses the Website's use of Tools and provides instructions for limiting the collection and disclosure of certain data. *See* Grow Therapy, *Privacy Notice*, https://growtherapy.com/legal/privacy-policies.

**3. Plaintiffs' Invasion of Privacy Claims (Counts IV & V) Should Be Dismissed.**

The "California Constitution and the common law both set a high bar for an invasion of privacy claim." *Bellumini v. Citigroup, Inc.*, No. cv-13-01743-CRB, 2013 WL 3855589, at *6 (N.D. Cal. July 24, 2013). "Given the similarity of the two tests, courts consider them together." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022). Specifically, courts consider "(i) the nature of any intrusion upon reasonable expectations of privacy, and (ii) the offensiveness or seriousness of the intrusion, including any justification and other relevant interests." *Heeger v. Facebook, Inc.*, 509

F. Supp. 3d 1182, 1193 (N.D. Cal. 2020) (cleaned up). Notably, mere browsing data on a website with health information often fails to meet the "high bar for an invasion of privacy claim" for either the California Constitution or common law because, among other things, such data contains only "general health information" unrelated to a specific individual. *See Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954 (N.D. Cal. 2017), *aff'd*, 745 Fed. Appx. 8 (9th Cir. 2018) (rejecting argument that "protected health information" was allegedly collected).

Here, Plaintiffs' allegations are faulty in several respects. First, they appear to be largely grafted from another pleading, as the references to the "booking process" allegations are incorrect, *see* Compl. ¶ 86 (incorrectly referring to paragraphs 59-67), and sometimes refer to an entirely different company, *see id.* ¶ 24 n.3 (referencing "Carbon Health"). Second, none of Plaintiffs' allegations show that any of the purported disclosures from the Website would be understood or linked to *Plaintiffs'* specific health or condition. To the contrary, Plaintiffs' only allegations show that appointments can be booked on behalf of other individuals (*see* "Relationship to Client" dropdown, Compl. ¶ 80), which could be someone other than the individual browsing, or could even be to review the providers available without an intent to book an appointment—in each instance, the information relating to the device or computer using the Website may have nothing to do with the information of the client submitted on the Website. *See Smith*, 262 F. Supp. 3d at 954 ("Nothing about the URLs, or the content of the pages located at those URLs, relates 'to the past, present, or future physical or mental health or condition *of an individual*.'") (emphasis in original); *Low v. Linkedin Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (dismissing privacy claims). Third, to the extent that Plaintiffs allege that their booking of appointments after disclosing a condition was highly-sensitive or private, they fail to allege facts showing that any of that information was improperly disclosed to a third party. Instead, their allegations simply show that Grow Care's Website, like any Website, sends and receives information that is submitted by the Website visitor, and has service provider-like technology that aids in that process. There are no factual allegations showing that any of the information is being sent to an *unintended* third party intruding on their privacy for its own purposes. The absence of such allegations forecloses Plaintiffs' claims. *See Doe v. Amgen Inc.*, No. 2:23-cv-07448-MCS-SSC, 2024 WL 575248, at *3 (C.D. Cal. Jan. 29, 2024) (dismissing privacy claims where "Plaintiff's allegations that the

presence of the Meta Pixel on Defendant's website, combined with Amgen's purported configurations of the Meta Pixel, resulted in the disclosure of her personal information, is generic and devoid of factual support"); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832-33 (N.D. Cal. 2021) (dismissing privacy claims relating to third-party website technology where the third-party was a "service provider" and thus an "extension of [defendant] Noom," and there were no factual allegations that the third party "intercepted and used the data itself").

In addition, for reasons stated above, Plaintiffs did not adequately allege a lack of consent because the Complaint failed to allege whether Plaintiffs read the Privacy Notices on the Website which includes prominent disclosures related to the Website's use of Tools. *See supra* IV.B.2. Without plausibly alleging a lack of consent, Plaintiffs cannot establish that that alleged disclosures were highly offensive. *See Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 3 (1994) (When "voluntary consent is present, a defendant's conduct will rarely be deemed highly offensive to a reasonable person so as to justify tort liability"); *United States v. Forrester*, 512 F.3d 500, 509 (9th Cir. 2008) (same); *Hammerling v. Google, LLC*, No. 22-17024, 2024 WL 937247, at *3 (9th Cir. Mar. 5, 2024) (no reasonable expectation of privacy when privacy policy disclosed the data sharing practice at issue).

Further, to the extent that Plaintiffs seek costs and damages under their constitutional invasion of privacy claim, their claim fails. "California's 'constitutional provision protecting the right of privacy' only "supports a cause of action for an injunction but it does not confer on a litigant a private right of action for damages." *Moore v. Rodriguez*, No. 20-cv-01481-BAS, 2021 WL 2222590, at *20 (S.D. Cal. June 2, 2021) (quotation marks omitted).

Lastly, for the same reasons stated above, *supra* IV.B.1, Plaintiffs' claim under the California Constitution must be dismissed with respect to putative class members who did not access the Website while located in California. The Complaint does not allege that any wrongful conduct occurred in California with respect to out-of-state putative class members. *See* Compl. ¶ 19 (alleging Grow Care is incorporated in Delaware and headquartered in New York); *Norwest Mortg., Inc. v. Superior Court*, 72 Cal. App. 4th 214, 224–25 (1999) ("[S]tate statutory remedies may be invoked by out-of-state parties when they are harmed by wrongful conduct occurring *in California.*").

## V. CONCLUSION

For the foregoing reasons, and because the pleading deficiencies in the Complaint cannot be cured by amendment, Grow Care respectfully requests that the Court grant this Motion and dismiss Plaintiffs' claims with prejudice.

Date: February 12, 2025

Respectfully Submitted,

SIDLEY AUSTIN LLP

By: /s/ *Amy P. Lally*
Amy P. Lally
Ian M. Ross (admitted *pro hac vice*)

*Attorneys for Defendant Grow Care, Inc.*