**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646)-837-7150
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Ines Diaz Villafana (State Bar No. 354099)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: idiaz@bursor.com

**DRURY LEGAL, LLC**
Scott R. Drury (State Bar No. 355002)
6 Carriage Lane
Highwood, Illinois 60040
Telephone: (312) 358-8225
E-mail: scott@drurylegal.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JANE DOE 1 and JANE DOE 2, individually and on behalf of all other persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GROW CARE, INC.,<br><br>Defendant. | Case No. 5:24-cv-09122-NW<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Date: July 30, 2025<br>Time: 9:00 a.m.<br>Courtroom: 3, 5th Floor<br>Judge: Hon. Noël Wise |

## TABLE OF CONTENTS

PAGE(S)


INTRODUCTION ..... 1

ARGUMENT ..... 2

I. THE COURT CAN EXERCISE PERSONAL JURISDICTION OVER DEFENDANT ..... 2

A. Defendant Purposefully Directed Its Activities at California ..... 2

1. Defendant Expressly Aimed Its Activities at California ..... 2

a. Defendant Expressly Aimed Its Website Tracking at California ..... 2

b. Defendant's Act of Contracting with California Providers Amounts to Express Aiming ..... 5

c. In Light of Briskin, Defendant's Arguments Lack Merit ..... 6

2. Defendant's Contacts Caused Harm Defendant Knew Likely Would Be Suffered in California ..... 7

B. Plaintiffs' Claims Arise Out of Defendant's Forum-Related Contacts ..... 7

C. The Court's Exercise of Personal Jurisdiction Over Defendant Comports with Traditional Notions of Fair Play and Substantial Justice ..... 9

II. PLAINTIFFS STATE A CLAIM UNDER THE CIPA AND ECPA ..... 12

III. PLAINTIFFS STATE A CLAIM FOR VIOLATION OF THE CMIA ..... 15

IV. PLAINTIFFS STATE INVASION OF PRIVACY CLAIMS ..... 20

CONCLUSION ..... 22

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*AMA Multimedia, LLC* v. *Wanat*,
970 F.3d 1201 (9th Cir. 2020) .......... 3, 6

*Ambry Genetics Data Breach Litig.*,
567 F.Supp.3d 1130 (C.D. Cal. 2021) .......... 20, 21

*Ayer v. White*,
2022 WL 657502 (C.D. Cal. Mar. 4, 2022) .......... 9

*Ayla, LLC v. Alya Skin Pty. Ltd.*,
11 F.4th 972 (9th Cir. 2021) .......... 6, 9

*B.K. v. Desert Care Network*,
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) .......... 12

*Barbour v. John Muir Health*,
2023 WL 2618967 (Cal. Super. Ct. Jan. 5, 2023) .......... 18

*Boschetto v. Hansing*,
539 F.3d 1011 (9th Cir. 2008) .......... 9

*Briskin v. Shopify, Inc.*,
2025 WL 1154075 (9th Cir. Apr. 21, 2025) .......... passim

*Cody v. Ring LLC*,
718 F.Supp.3d 993 (N.D. Cal. 2024) .......... 20

*Cole v. Quest Diagnostics, Inc.*,
2025 WL 88703 (D.N.J. Jan. 14, 2025) .......... 13, 14

*Colleen M. v. Fertility & Surgical Assocs. Of Thousand Oaks*,
132 Cal. App. 4th 1466 (2005) .......... 16

*Cousin v. Sharp Healthcare*,
681 F.Supp.3d 1117 (S.D. Cal. 2023) .......... 17

*Cousin v. Sharp Healthcare*,
702 F.Supp.3d 967 (S.D. Cal. 2023) .......... 17, 18

*Data Disc, Inc. v. Systems Tech. Associates, Inc.*,
557 F.2d 1280 (9th Cir. 1977) .......... 11

*David John, M.D., Inc. v. Polisky*,
2020 WL 2490097 (D. Haw. May 14, 2020) .......... 11

*Digitech Image Technologies, LLC v. Mamiya Digital Imaging Co., LTD.*, 2013 WL 1415121 (C.D. Cal., Apr. 8, 2013) ..... 5, 6

*Doe v. Amgen Inc.*, 2024 WL 575248 (C.D. Cal. Jan. 29, 2024) ..... 21

*Doe v. Beard*, 63 F.Supp.3d 1159 (C.D. Cal. 2014) ..... 20, 21

*Doe v. FullStory, Inc.*, 2024 WL 188101 (N.D. Cal. Jan. 17, 2024) ..... 6

*Doe v. Meta Platforms, Inc.*, 690 F.Supp.3d 1064 (N.D. Cal. 2023) ..... 13

*Doe v. Regents of Univ. of California*, 672 F.Supp.3d 813 (N.D. Cal. 2023) ..... 17, 18

*Egan v. X-Mode Social, Inc.*, 2024 WL 2701967 (D. Mass. May 24, 2024) ..... 6

*Ford Motor Co. v. Montana Eight Jud. Dist. Ct.*, 592 U.S. 351 (2021) ..... 7, 8

*Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597 (9th Cir. 2018) ..... 10, 11

*Gaige v. Exer Holding Co., LLC*, 2025 WL 559719, n.5 (C.D. Cal. Mar. 2, 2025) ..... 12

*Garcia v. Build.com, Inc.*, 2023 WL 4535531 (S.D. Cal. July 13, 2023) ..... 19

*Graham v. Noom*, Inc., 533 F.Supp.3d 823 (N.D. Cal. 2021) ..... 21

*Hammerling v. Google, LLC*, 2024 WL 937247 (9th Cir. Mar. 5, 2024) ..... 21

*Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal.4th 1 (1994) ..... 21

*In re BetterHelp, Inc. Data Disclosure Cases*, 2024 WL 3416511 (N.D. Cal. July 15, 2024) ..... 12

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) ..... 14

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125 (3d Cir. 2015) ..... 13, 14

*Incorp Services Inc. v. Incsmart.Biz Inc.*,
2012 WL 3685994 (N.D. Cal. Aug. 24, 2012) ... 7

*Javier v. Assurance IQ, LLC*,
2021 WL 940319 (N.D. Cal. Mar. 9, 2021) ... 15

*Katz v. Oracle Am., Inc.*,
2023 WL 2838118 (N.D. Cal. 2023) ... 12

*Kauffman v. Home Depot, Inc.*,
2024 WL 221434 (S.D. Cal. Jan. 19, 2024) ... 6, 8, 9

*Kurowski v. Rush Sys. for Health*,
2023 WL 2349606 (N.D. Ill. Mar. 3, 2023) ... 15

*Kurowski v. Rush Sys. For Health*,
2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) ... 15

*Lopez v. Apple, Inc.*,
519 F.Supp.3d 672 (N.D. Cal. 2021) ... 13

*Low v. Linkedin Corp.*,
900 F.Supp.2d 1010 (N.D. Cal. 2012) ... 21

*Martin v. Outdoor Network LLC*,
2024 WL 661173 (C.D. Cal. Jan. 31, 2024) ... 6

*Massie v. General Motors Co.*,
2021 WL 2142728 (E.D. Cal. May 26, 2021) ... 6

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
647 F.3d 1218 (9th Cir. 2011) ... 2

*Mikulsky v. Noom, Inc.*,
682 F.Supp.3d 855 (S.D. Cal. 2023) ... 6

*Moledina v. Marriott Int'l, Inc.*,
635 F.Supp.3d 941 (C.D. Cal. 2022) ... 6

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ... 20

*Price v. Carnival Corp.*,
2024 WL 221437 (S.D. Cal. Jan. 19, 2024) ... 20

*Rancourt v. Meredith Corp.*,
2024 WL 381344 (D. Mass. Feb. 1, 2024) ... 6

*R.C. v. Sussex Publishers, LLC*,
2025 WL 948060 (N.D. Cal. Mar. 28, 2025) ... 19

*R.C. v. Walgreen Co.*,
733 F.Supp.3d 876 (C.D. Cal. 2024) ........ 12

*R.S. v. Prime Healthcare Servs.*,
2025 WL 103488 (C.D. Cal. Jan. 13, 2025) ........ 12

*Regents of Univ. of Cal. v. Superior Court*,
220 Cal.App.4th 549 (2013) ........ 18

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ........ 14

*Ribas v. Clark*,
38 Cal.3d 355 (1985) ........ 14

*Rodriguez v. Google LLC*,
2021 WL 2026726 n.8 (N.D. Cal. May 21, 2021) ........ 12

*Sacco v. Mouseflow, Inc.*,
2022 WL 4663361 (E.D. Cal. Sept. 30, 2022) ........ 6

*Saleh v. Nike, Inc.*,
562 F.Supp.3d 503 (C.D. Cal. 2021) ........ 6

*Shah v. Fandom, Inc.*,
754 F.Supp.3d 924 (N.D. Cal. 2024) ........ 15

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) ........ 21

*St. Aubin v. Carbon Health Technologies, Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) ........ passim

*Vartanian v. VW Credit, Inc.*,
2012 WL 12326334 (C.D. Cal. Feb. 22, 2012) ........ 13

*Vigil v. Muir Med. Grp. IPA, Inc.*,
84 Cal.App.5th 197 (2022) ........ 18

*Wilson v. Rater8, LLC*,
2021 WL 4865930 (S.D. Cal. Oct. 18, 2021) ........ 17

*Yamashita v. LG Chem, Ltd.*,
62 F.4th 496 (9th Cir. 2023) ........ 9

**STATUTES**

18 U.S.C. § 2510 ........ 1

Cal. Civ. Code § 56.05 ........ 16, 17

Cal. Civ. Code § 56.10 .......... 1, 16, 18, 20

Cal. Civ. Code § 56.36 .......... 18

Cal. Penal Code § 631 .......... 1

## INTRODUCTION

Plaintiffs Jane Doe 1 and Jane Doe 2 ("Plaintiffs") allege that Defendant Grow Care, Inc. ("Defendant") installed and embedded the tracking software ("Trackers") of third parties Datadog, Inc. ("Datadog"), Twilio, Inc. ("Twilio"), and Wingify Software Pvt. Ltd. ("Wingify") (collectively, the "Third Parties") into Defendant's website growtherapy.com (the "Website"). As a result, the private medical information and other sensitive communications of Plaintiffs and class members was surreptitiously intercepted by, or otherwise disclosed to, the Third Parties without Plaintiffs' and class members' consent. Plaintiffs allege that Defendant violated: (1) the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510, *et seq.*; (2) the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631; (3) the California Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code § 56.10; and (4) Plaintiff's and class members' right to privacy under the California Constitution and common law.

Defendant moves to dismiss Plaintiffs' First Amended Complaint (the "FAC") (ECF No. 29) primarily based on the contention that the Court cannot exercise personal jurisdiction over Defendant. Defendant's Motion to Dismiss Plaintiff's FAC ("MTD") (ECF No. 37) at 4-16. Based on the Ninth Circuit's recent decision in *Briskin v. Shopify, Inc.*, --- F.4th ----, 2025 WL 1154075 (9th Cir. Apr. 21, 2025), the contention lacks merit. Under *Briskin*, Defendant purposefully directed its activities toward California, and Plaintiffs' claims arise out of and relate to Defendant's contacts with California. Given Defendant's contacts and activities in California, it is reasonable to subject Defendant to jurisdiction in California. *See Briskin*, 2025 WL 1154075, at *3, 13.

Defendant's secondary arguments fare no better. For instance, Defendant argues that Plaintiffs' allegations: (1) show that Defendant used the Trackers to collect non-sensitive, routine website activity that does not amount to Protected Health Information ("PHI"); (2) fail to establish that the Third Parties intentionally intercepted Plaintiffs' and class members confidential and sensitive medical information; and (3) fail to establish that Defendant disclosed Plaintiffs' and class members' medical information. MTD at 18, 21-22. But these arguments are belied by Plaintiffs' actual allegations and the reasonable inferences therefrom. Those allegations and inferences make clear that: (1) the communications at issue contained PHI, among other sensitive information; (2)

Defendant aided the Third Parties in intercepting that sensitive information; and (3) Defendant disclosed Plaintiffs' and class members' sensitive information without consent.

Because the Court can exercise personal jurisdiction over Defendant, and because Plaintiffs sufficiently allege each of their claims against Defendant, the Court should deny Defendant's motion.

## ARGUMENT

## I. THE COURT CAN EXERCISE PERSONAL JURISDICTION OVER DEFENDANT

According to Defendant, the Court cannot exercise specific personal jurisdiction over it because Plaintiffs cannot "show that their claims arise out of conduct that Grow Care ***purposefully directed at California.***" MTD at 2. Not so. The Ninth Circuit's recent decision in *Briskin* makes clear that this Court may properly exercise personal jurisdiction over Defendant based on its conduct in aiding the interception of, and affirmatively disclosing, California residents' confidential and sensitive communications for Defendant's own purposes. *See Briskin*, 2025 WL 1154075, at *3, 13.

### A. Defendant Purposefully Directed Its Activities at California

Defendant argues it did not purposefully direct its activities at California because it did not expressly aim its activities at California. MTD at 6-12. A party purposefully directs its activities to a particular forum if it has: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011). Defendant only challenges the second and third prongs of this test. *See* MTD at 6-12. Those challenges fail.

#### 1. Defendant Expressly Aimed Its Activities at California

##### *a. Defendant Expressly Aimed Its Website Tracking at California*

In *Briskin*, the Ninth Circuit applied "traditional personal jurisdiction precedent to the ever-evolving world of e-commerce." *Briskin*, 2025 WL 1154075, at *3. In that case, the defendant, among other things: (1) surreptitiously installed cookies on the plaintiff's device; (2) used geolocation technology which resulted in the defendant knowing – either at the time of installation, or shortly thereafter – that the plaintiff resided in California; and (3) had the ability to use the information collected via the cookies for its own business purposes. *See id.* at *4, 11. The Ninth Circuit ultimately held that the defendant was subject to specific personal jurisdiction in California.

*Id.* at *15. Moreover, the court found that the defendant "expressly aimed its conduct at California through the extraction, maintenance, and commercial distribution of the California consumers' personal data in violation of California laws." *Id.* at *11.

According to the Ninth Circuit, "though [the defendant's] entry into the state of California is by electronic means, its surreptitious interception of [the plaintiff's] personal identifying information certainly is a relevant contact with the forum state." *Id.* The court rejected the argument that the contact was "mere happenstance" or random, isolated and fortuitous. *Id.* at *11, 14 (the defendant "deliberately reached out beyond its home state by knowingly installing tracking software onto unsuspecting Californians' phones so that it could later sell the data it obtained, in a manner that was neither random, isolated, [n]or fortuitous.") (internal quotation marks omitted). Moreover, the court rejected the argument that "because a nationwide company is everywhere, it is jurisdictionally nowhere except in its principal place of business and state of incorporation." *Id.* at *12. In short, the Ninth Circuit held that an interactive website operator expressly aims conduct at a forum "when its contacts are its own choice and not random, isolated, or fortuitous . . . even if that platform cultivates a national audience [] for commercial gain." *Id.* at *13.

In reaching its holding, the Ninth Circuit overruled *AMA Multimedia, LLC v. Wanat* ("*AMA Multimedia*"), 970 F.3d 1201 (9th Cir. 2020), which required a website to have a "forum-specific focus" in order to confer personal jurisdiction. *See Briskin*, 2025 WL 1154075, at *13. The court also overruled "any other case" requiring "differential treatment of the forum state for a finding of express aiming." *Id.* (internal quotations omitted). The Ninth Circuit emphasized that requiring differential targeting would "have the perverse effect of allowing a corporation to direct its activities toward all 50 states yet to escape specific personal jurisdiction in each of those states for claims arising from or relating to their relevant contacts in the forum state that injure that state's residents." *Id.*

This case is analogous to *Briskin*. Like the defendant in *Briskin*, Defendant expressly aimed its activity at California by: (1) "collecting Website user activity and geolocation data from Website users in California in order to tailor advertisements and content to increase user engagement in California" (FAC ¶ 13) (internal quotation marks omitted); (2) using tracking technologies to

automatically collect information about Website users' location" (*id.* ¶ 14); and (3) using tracking technologies such as cookies, web beacons, embedded scripts and location-identifying technologies to recognize the devices Website users are using (*id.* ¶ 16). Through the above-described activities, Defendant "collect[ed] Website usage data of California Website users," which it then used "to target those California users with advertisements – thereby increasing Defendant's Website traffic and revenue from Californians." *Id.* ¶ 17. "Notably, both Plaintiffs have received targeted advertisements from Defendant on social media platforms." *Id.* ¶ 21.

From the allegations set forth above, the Court can reasonably infer that Defendant installed software, in the form of cookies or other tracking technologies, on "unsuspecting Californians' devices" and "extract[ed] personal data from them." *See Briskin*, 2025 WL 1154075, at *14. Indeed, Plaintiffs specifically allege Defendant's use of such tracking technologies in connection with its tracking. *See* FAC ¶ 17.

Beyond Defendant's use of Trackers to obtain information regarding California Website users, Defendant also sought to cultivate an audience and obtain patients in California through its operation and design of the Website. *Id.* ¶ 24. For instance, Defendant contracted with California-licensed mental health providers, including providers located in California, in order to: (1) provide California residents with therapy services in California; and (2) allow Website users to connect with the California providers via the Website. *Id.* ¶ 25; *see also id.* ¶¶ 26-33. If Defendant did not allow Website users to book appointments with California providers via the Website, Plaintiffs – who are California residents – would not have been able to book appointments and would not have had their PHI and personally identifiable information ("PII") intercepted by, and or disclosed to, the Third Parties. *Id.* ¶ 34.

Based on the above, as in *Briskin*, Defendant expressly aimed its activities at California because the decision to engage in those activities was its "own choice" for its own financial gain, as opposed to being "random, isolated, or fortuitous." *Briskin*, 2025 WL 1154075, at *13. Also, because Defendant "use[d] tracking technologies" to geolocate its Website users, including its California users, and collect Website user activity, as in *Briskin*, Defendant knew – either at the time it began tracking Plaintiffs and class members or shortly thereafter – that Plaintiffs and class

members resided in California. *See id.* at *11. Further, as in *Briskin*, Defendant admits to using that geolocation and activity data to target California Website users with advertisements to increase Defendant's Website traffic and revenue from Californians. *See id.* at *3. Thus, it is clear that Defendant "expressly aimed its conduct at California through its extraction, maintenance, and commercial distribution of the California consumers' personal data in violation of California laws." *See id.* at *11.

*b. Defendant's Act of Contracting with California Providers Amounts to Express Aiming*

In addition to Defendant's conduct in tracking Website users' activity subjecting Defendant to the Court's jurisdiction, its decision to contract with California-licensed mental health providers also confers the Court with jurisdiction. *See* FAC ¶¶ 25, 28, 32. California residents, such as Plaintiffs and class members cannot obtain telehealth services from "providers not licensed in California." *See id.* ¶¶ 29-32. Thus, through Defendant's intentional, non-random, or fortuitous decision to contract with California-licensed mental health providers, Defendant has reached out of its home state so that its services are available to California residents, resulting in the data privacy violations alleged in the FAC. *See Briskin*, 2025 WL 1154075, at *14 (noting the importance of the defendant "deliberately reach[ing] out beyond its home state").

Aside from Defendant's contracts constituting express aiming under *Briskin*, these contacts are also like the defendant's contracts in *Digitech Image Technologies, LLC v. Mamiya Digital Imaging Co., LTD.* ("*Digitech*"), 2013 WL 1415121, at *4 (C.D. Cal., Apr. 8, 2013). In *Digitech*, the court held it could exercise specific personal jurisdiction over a foreign defendant who: (1) sold its products in the United States through an exclusive contract with a distributor from New York; and (2) listed "seven California retail locations on its website where consumers [could] purchase its products" because these actions showed the defendant was "fully aware that its allegedly infringing products will and do reach California through the stream of commerce due to [the] established distribution relationship." *Id.* at *1, 3. Similarly here, Defendant's contracts with California-licensed providers constitute "compelling evidence that [Defendant] contemplated that its [services] would foreseeably be [used] in[] California" because without its contracts, it would be

impossible for California residents to use Defendant's services. *See id.* at *4; *see also* FAC ¶¶ 29-32.

*c. In Light of Briskin, Defendant's Arguments Lack Merit*

Defendant filed its motion prior to the *Briskin* decision. In that pre-*Briskin* motion, Defendant argues the Court lacks personal jurisdiction over Defendant based on the lack of differential treatment between California and other jurisdictions. *See* MTD at 6-12. In light of *Briskin*, those arguments lack merit and are otherwise irrelevant. Indeed, in Briskin, the Ninth Circuit explicitly held that differential treatment is not a requirement for express aiming. *Briskin*, 2025 WL 1154075, at *13.

For example, Defendant cites myriad cases to support its now meaningless contention that "Defendant did nothing specifically directed at California or California residents to tether [its Website] to this forum." MTD at 6-8 (citing *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1210 (9th Cir. 2020); *Sacco v. Mouseflow, Inc.*, 2022 WL 4663361, at *4–5 (E.D. Cal. Sept. 30, 2022); *Doe v. FullStory, Inc.*, 2024 WL 188101, at *11 (N.D. Cal. Jan. 17, 2024); *Saleh v. Nike, Inc.*, 562 F.Supp.3d 503, 513 (C.D. Cal. 2021); *Martin v. Outdoor Network LLC*, 2024 WL 661173, at *5 (C.D. Cal. Jan. 31, 2024); *Mikulsky v. Noom, Inc.*, 682 F.Supp.3d 855, 868 (S.D. Cal. 2023); *Kauffman v. Home Depot, Inc.*, 2024 WL 221434, at *1 (S.D. Cal. Jan. 19, 2024); *Massie v. General Motors Co.*, 2021 WL 2142728 (E.D. Cal. May 26, 2021); *Moledina v. Marriott Int'l, Inc.*, 635 F.Supp.3d 941, 948 (C.D. Cal. 2022); *Egan v. X-Mode Social, Inc.*, 2024 WL 2701967, at *5 (D. Mass. May 24, 2024); *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 980 (9th Cir. 2021)). Relatedly, Defendant repeatedly argues that Plaintiffs have alleged a "***nationwide*** practice" and that "California website visitors were no more than a part of this alleged practice than any other state." MTD at 8, 10. But again, as previously explained, the Ninth Circuit emphasized that "requiring a 'forum-specific focus' or 'differential targeting,' . . . is incorrect" and expressly overruled it, including overruling *AMA Multimedia* and "any other cases that require some sort of differential treatment of the forum state for a finding of 'express aiming.'" *Briskin*, 2025 WL 1154075, at *12-13.

Defendant also argues that Plaintiff's reliance on *Rancourt v. Meredith Corp.*, 2024 WL 381344 (D. Mass. Feb. 1, 2024), is "misplaced." MTD at 10. However, Plaintiffs need not rely on

*Rancourt* – a decision from the District of Massachusetts – given the Ninth Circuit's decision in *Briskin*.

**2. Defendant's Contacts Caused Harm Defendant Knew Likely Would Be Suffered in California**

Defendant argues that harm in California was not foreseeable to Defendant because "the only connection between Grow Care's alleged conduct and California is Plaintiffs' claim that they are California residents." MTD at 12. But as explained above, that argument is belied by *Briskin*.

Moreover, Defendant's intentional contacts with California had foreseeable effects in California. The foreseeability inquiry "does not require that the 'brunt' of the harm be suffered in the forum jurisdiction," and it does not matter that more harm has been suffered in a different forum. *Incorp Services Inc. v. Incsmart.Biz Inc.*, 2012 WL 3685994, at *8 (N.D. Cal. Aug. 24, 2012).

Here, it was foreseeable that Defendant's activities in California would inflict harm on California residents – including Plaintiffs and class members – because Defendant "deliberately reached out beyond its home state" to: (1) engage in surreptitious conduct that allowed for the interception by, and disclosure to, the Third Parties of Plaintiff's and class members' sensitive and confidential PHI and PII for the benefit and use by Defendant; and (2) contract with California mental health providers to enable and incentivize California residents to use the Website. FAC ¶¶ 13-17, 25-32. Defendant's activities were "neither random, isolated, nor fortuitous." *Briskin*, 2025 WL 1154075, at *13.

**B. Plaintiffs' Claims Arise Out of Defendant's Forum-Related Contacts**

Defendant argues that Plaintiffs' claims do not arise out of or relate to Defendant's contacts with California because: (1) "Plaintiffs' allegations relating to the data allegedly collected" do not have "anything to do with Grow Care's purported contacts with California"; and (2) "Plaintiffs . . . unilaterally accessed the Website." MTD at 13. Defendant is wrong.

As the Supreme Court held in *Ford Motor Co. v. Montana Eight Jud. Dist. Ct.*, 592 U.S. 351, 352, 362 (2021), this part of the test can be met by alleging the defendant's claims "arise out of or relate to the defendant's contacts with the forum," meaning that "[t]he first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support

jurisdiction without a causal showing." *Id.* The Ninth Circuit recognized in *Briskin* that "Ford's business activities in the forum States (*i.e.*, advertising, servicing vehicles) ***made it more likely*** that the plaintiffs' injuries occurred there" and, therefore, "the forum States could hale Ford to defend the product liability lawsuits" in the forum. *Briskin*, 2025 WL 1154075, at *14 (discussing *Ford*, 592 U.S. at 362) (emphasis added).

The Ninth Circuit followed *Ford*'s directive in *Briskin* and held that the plaintiff's claims – namely, that the defendant installed cookies on the plaintiff's device to collect data to use for targeted advertisement – arose out of the defendant's contacts with the plaintiff's device. *Id.* at *14. The Ninth Circuit further held that the plaintiff's claims related to the defendant's contacts because the injury alleged was the type that "would tend to be caused by [the defendant's] contacts," given that the defendant's "installation of software onto unsuspecting Californians' devices and extracting personal data from them [was] the kind of contact that would tend to cause privacy injuries." *Id.* (internal citations omitted).

Again, this case is analogous to *Briskin*. As in *Briskin*, Plaintiffs' allegations and the reasonable inferences therefrom establish that Defendant violated Plaintiffs' and class members' privacy rights by installing Trackers onto their devices in order to allow the interception and disclosure of their PII and PHI. *See id*; *see also Ford*, 592 U.S. at 362. These contacts are the kind "that would tend to cause privacy injuries." *See Briskin*, 2025 WL 1154075, at *14. As such, Plaintiffs' claims "satisfy the second requirement for specific jurisdiction." *Id.*

Based on Plaintiffs' allegations, the reasonable inferences and the law, Defendant's characterization of the relationship between its contacts, the forum and the resulting harm as a "tenuous chain of unsubstantiated inferences" (MTD at 14) is incredible. Defendant's purposeful actions made it "more likely" that Plaintiffs and class members would suffer the harm alleged in the FAC, and the alleged harm is of the type that would "tend to be caused" by Defendant's actions. *See Ford*, 592 U.S. at 362; *see also Briskin*, 2025 WL 1154075, at *14.

Defendant cites *Kauffman v. Home Depot, Inc.*, 2024 WL 221434 (S.D. Cal. Jan. 19, 2024), for the proposition that the court in that case did not find that the alleged harm arose out of or related to the "data capture" at issue. MTD at 13. *Kaufmann* is inapposite because: (1) its holding was

premised on the now overturned ruling by the lower court in *Briskin*; and (2) unlike the defendant in *Kauffman*, Defendant's California contacts, here, ***did*** "set the wheels in motion for [Defendant] to eventually inflict [Plaintiffs'] privacy-related harm" as described above. *Kauffman*, 2024 WL 221434, at *3.

Defendant's reliance on *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496 (9th Cir. 2023) (MTD at 14), is also unavailing because there, the reason the Ninth Circuit did not find the defendant's contacts arose out of or related to the plaintiff's harm was that the plaintiff did not allege the product at issue was involved in the defendant's relevant contacts. *Id.* at 506. But here, Defendant's actions are directly related to the harm Plaintiffs and class members suffered, as discussed throughout.

Defendant further argues that Plaintiffs' claims do not arise out of or relate to Defendant's contacts because Plaintiffs "unilaterally accessed the Website." MTD at 13. In making the argument, Defendant relies upon distinguishable cases where the plaintiff's unilateral actions were the only connection between the defendant and the forum. MTD at 13 (citing *Walden v. Fiore*, 571 U.S. U.S. 277, 284 (2014) and *Ayer v. White*, 2022 WL 657502, at *5 (C.D. Cal. Mar. 4, 2022)). As described throughout, here, Defendant's contacts are not limited to Plaintiffs' unilateral actions.

### C. The Court's Exercise of Personal Jurisdiction Over Defendant Comports with Traditional Notions of Fair Play and Substantial Justice

A court may assert personal jurisdiction over a defendant if it comports with traditional notions of fair play and substantial justice. In making this determination, courts consider: "(1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Ayla*, 11 F.4th at 980; *see also Briskin*, 2025 WL 1154075, at *15. If the plaintiff establishes a *prima facie* case for jurisdiction, the defendant must put forth a "'compelling case' that the exercise of jurisdiction would" be unreasonable. *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008); *see also Briskin*, 2025 WL 1154075, at *15.

In *Briskin*, the defendant argued that it would be unfair for the court to assert jurisdiction because that could lead to specific jurisdiction in all fifty states. *Briskin*, 2025 WL 1154075, at *15. The Ninth Circuit found that the defendant's contention "may be true, but not unfair" if the contacts the defendant made in all fifty states were like its California contacts. *Id.* The court further found that the contention may not be true if all fifty states did not have privacy laws like those in California. *Id.* The Ninth Circuit also rejected the defendant's argument that the existence of alternative forums resulted in a California forum somehow being unfair. *See id.*

Given the similarity between the factual allegations in *Briskin* and the present case, the Court should follow *Briskin* and find that the fair play and substantial justice factors "weigh in favor of holding that the exercise of personal jurisdiction in California is reasonable." *See id.* Notably, because Plaintiffs have established a *prima facie* case of personal jurisdiction, the burden is on Defendant to put forth a compelling case that exercise of jurisdiction would be unreasonable. It has failed to carry that burden. Plaintiffs address Defendant's failed arguments below.

First, for the reasons discussed throughout, Defendant's argument that it has not purposefully interjected itself into the forum (MTD at 15) fails.

Second, Defendant would not face an unreasonable burden by litigating in California. Even if Defendant would face a slight burden in having to travel to California, it has not "presented evidence that the inconvenience is so great as to constitute a deprivation of due process." *Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 608 (9th Cir. 2018) (cleaned up). Defendant is a corporate entity that does business in different parts of the country. Moreover, given modern advances "in communication and transportation," the "burden of litigating in another forum" is reduced. *Id.*

Third, Defendant makes no compelling argument of a conflict with the sovereignty of New York or Delaware. *See* MTD at 16. Defendant merely argues that because Plaintiffs' "claims do not arise out of [Defendant's] contacts with any other State," the claims should be heard in Defendant's home state. *Id.* Again, Defendant ignores that Plaintiffs' claims arise out of Defendant's contacts with California. Moreover, this prong of the analysis questions whether a conflict of laws exists.

*See David John, M.D., Inc. v. Polisky*, 2020 WL 2490097, at *12 (D. Haw. May 14, 2020). Defendant did not identify a conflict of law here, so this factor weighs in Plaintiffs' favor.

Fourth, California has an interest in adjudicating the case in California to protect its citizens against tortious conduct committed against them within the state. *See Data Disc, Inc. v. Systems Tech. Associates, Inc.*, 557 F.2d 1280, 1288 (9th Cir. 1977). Defendant's argument that there is no connection to California besides "Plaintiffs' claims [being] based on California law" is wrong, as discussed throughout. This prong favors Plaintiffs.

Fifth, the efficiency factor depends on the location of witnesses and evidence. *Freestream*, 905 F.3d at 609. This factor is "no longer weighed heavily" given communication and transportation advances. *Id*. Plaintiffs are located in California, and Defendant's motion did not state where its own witnesses are located. Even if some evidence is outside of California, this factor does not favor Defendant.

Sixth, because Plaintiffs are both located in California, it would be inconvenient for Plaintiffs to litigate elsewhere. *See Freestream*, 905 F.3d at 609.

Seventh, Defendant does not fully articulate its argument that alternative forums exist "based on Plaintiffs' own allegations." MTD at 16. Nonetheless, as discussed above, just because there may be other available forums does not make this Court's exercise of jurisdiction unreasonable, considering all the other factors. *See Freestream*, 905 F.3d at 609 (describing the factors as a balancing test).

In sum, Defendant fails to present a compelling case that this Court's exercise of personal jurisdiction over Defendant in California would be unreasonable, especially given Defendant's extensive activity in California, and California's interest in adjudicating purposeful torts committed against its citizens. *See Freestream*, 905 F.3d at 609-10 (holding that the defendant failed to make a compelling case of unreasonableness, especially "in light of Nevada's strong interest in adjudicating matters involving intentional torts committed within the State"). Accordingly, the Court should deny Defendant's motion based on the alleged lack of personal jurisdiction over Defendant.

## II. PLAINTIFFS STATE A CLAIM UNDER THE CIPA AND ECPA

Defendant argues that Plaintiffs have failed to plead claims under the CIPA[1] and ECPA. MTD at 16-20. First, Defendant argues that, because the ECPA is a "one-party consent statute" and because Defendant "consented to" the Third Parties' interception, "liability under the ECPA is precluded." MTD 17. Defendant further argues that the ECPA's crime-tort exception does not apply because: (1) Plaintiffs did not allege Defendant "intended to commit a tort"; and (b) Defendant used the Trackers for "marketing, advertising, and analytics efforts." MTD at 17-18 (cleaned up). Defendant is wrong.

Courts in this Circuit have routinely found that the crime-tort exception applies when a defendant acted for monetary gain if the "plaintiffs have adequately alleged that the defendant's conduct violated state law, including [] privacy claims." *R.C. v. Walgreen Co.*, 733 F.Supp.3d 876, 901 (C.D. Cal. 2024). Here, the crime-tort exception applies. Plaintiffs have plausibly alleged that, independent of any ECPA violation, Defendant has violated state laws, including the CIPA, the CMIA, and the right to privacy under the California Constitution. *See* FAC ¶¶ 144, 161-185. Plaintiffs' allegations are sufficient at this stage. *See R.C.*, 733 F. Supp. 3d at 901; *In re BetterHelp, Inc. Data Disclosure Cases*, 2024 WL 3416511, at *4 (N.D. Cal. July 15, 2024); *Gaige v. Exer Holding Co., LLC*, 2025 WL 559719, at *5, n.5 (C.D. Cal. Mar. 2, 2025); *R.S. v. Prime Healthcare Servs.*, 2025 WL 103488, at *7 (C.D. Cal. Jan. 13, 2025); *B.K. v. Desert Care Network*, 2024 WL 1343305, at *6 (C.D. Cal. Feb. 1, 2024).[2]

Second, Defendant argues that Plaintiffs' CIPA and ECPA claims fail because they did not "plead allegations that any interception of Plaintiffs' data by third parties through the [Trackers] was intentional." MTD 18. According to Defendant, Plaintiffs' allegations that the Trackers are "designed to record 'user's experiences on the [Website]' or 'web behavior,'" undermine "any inference of intent. *Id.* Defendant is wrong.

---

[1] Plaintiffs acknowledge that their CIPA claim and invasion of privacy claim under the California Constitution only apply to the California subclass, not the nationwide class.

[2] The weight of authority cited by Plaintiffs undermines Defendant's reliance on the outlier cases of *Rodriguez v. Google LLC*, 2021 WL 2026726, at *6 n.8 (N.D. Cal. May 21, 2021), and *Katz v. Oracle Am., Inc.*, 2023 WL 2838118, at *10 (N.D. Cal. 2023).

Plaintiffs allege the Trackers intercept "patient communications on the Website." FAC ¶¶ 61, 80. And even though Plaintiffs note that some of the Trackers record a wide breadth of user actions on the Website, Plaintiffs make clear that this "includ[es] the electronic communications website visitors entered into search bars, chat boxes, and online quizzes, in real time." *Id.* ¶¶ 71 101. These allegations suffice because intent "can be shown through knowledge to a substantial certainty that . . . use of the equipment will result in the recordation of a confidential conversation." *Lopez v. Apple, Inc.*, 519 F.Supp.3d 672, 689 (N.D. Cal. 2021) (cleaned up). Here, Plaintiffs' allegations show the Third Parties knew, to a substantial certainty, that their Trackers would intercept communications, especially for those Trackers that record all actions on a website. *See id.* Additionally, questions of the Third Parties' "true intent . . . turn on disputed questions of fact that need development on a full evidentiary record" – *i.e.*, inquiry into those questions is not appropriate at this stage. !*See Doe v. Meta Platforms, Inc.*, 690 F.Supp.3d 1064, 1076 (N.D. Cal. 2023).

Moreover, *Vartanian v. VW Credit, Inc.*, 2012 WL 12326334 (C.D. Cal. Feb. 22, 2012), relied on by Defendant (MTD at 19), is inapposite because there, the allegations included no factual circumstances plausibly alleging that the defendant recorded telephone conversations. *Vartanian*, 2012 WL 12326334, at *2. Here, Plaintiffs: (1) extensively detail how the Trackers work and how they intercept communications (FAC ¶¶ 61-105); and (2) provide screenshots of the type of communications the Trackers intercept. *Id.* ¶¶ 107-118.

Third, Defendant argues that the Third Parties did not intercept any communications because "Plaintiffs' browsers were communicating directly with the purported eavesdroppers" resulting in the Third Parties being "parties" to the communications. MTD at 19. For support, Defendant relies on *Cole v. Quest Diagnostics, Inc.*, 2025 WL 88703 (D.N.J. Jan. 14, 2025), in which the District Court of New Jersey applied the Third Circuit Court's holding in *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125 (3d Cir. 2015). MTD at 19. Defendant's argument is unavailing because: (1) as discussed below, the California Supreme Court, Ninth Circuit and courts in the Northern District of California have all made the opposite determination in factually similar cases; and (2) the Third Circuit's interpretation of the CIPA does not supersede those courts' interpretation of that statute. Further, Plaintiffs note that the *Cole* court arguably misapplied the findings from *In*

*re Google Inc.* The *In re Google* court made clear that its reasoning relied on the fact that the plaintiffs' browsers would have sent Google data anyway, aside from what the Google cookies sent. *In re Google Inc.*, 806 F.3d at 141-42. That is unlike the *Quest* facts, or the facts in this case, where the Third Parties would not have received the same data from the plaintiffs' browsers absent the defendant's alleged wrongdoing. *See Cole*, 2025 WL 88703, Plaintiff's First Amended Complaint ¶ 23; FAC ¶¶ 2, 50, 61, 80, 106 (discussing Defendant's choice to implement the Trackers causing patient's PHI and PII to be disclosed).

For example, in *Ribas v. Clark*, 38 Cal.3d 355, 358 (1985), the plaintiff had a conversation with his wife while his wife's friend listened, thereby communicating with the wife's friend directly without the plaintiff's knowledge. On those facts, the California Supreme Court held that the wife's friend was a third-party wiretapper. *Id.* at 361-62. Thus, under *Ribas*, even if a recipient simultaneously and directly receives a communication, the recipient is nonetheless an eavesdropper because "such secret monitoring denies the speaker an important aspect of privacy of communication – the right to control the nature and extent of the firsthand dissemination of his statements." *Id.* at 361.

Similarly, in *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019), the court held that "it cannot be that anyone who receives a direct signal escapes liability by becoming a party to the communication. Someone who presses up against a door to listen to a conversation is no less an eavesdropper just because the sound waves from the next room reach his ears directly. That person remains a third party, even as a direct recipient of the speaker's communication." *Id.* at *2.

Lastly, in *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020), the Ninth Circuit held that Facebook was not "exempt from liability as a matter of law under the . . . CIPA as a party to the communication" because the "simultaneous, unknown duplication and communication of GET requests do not exempt a defendant from liability under the party exception." *Id.* at 608. Therefore, Defendant's argument as to both ECPA and CIPA fails.[3]

[3] As to the application of Defendant's interception argument to the ECPA claim, Plaintiffs rely upon their arguments related to the crime-tort exception in the preceding paragraphs.

Fourth, Defendant argues that because Plaintiffs "voluntarily disclosed" their PHI and PII and "agreed, pursuant to Grow Care's Privacy Notices, that their information could be used for [] treatment, payment, and health care operations" that "Plaintiffs cannot allege that any of their information was 'intercepted.'" MTD at 19. That is wrong.

As a preliminary matter, Defendant "bears the burden to establish consent and, on a motion to dismiss, would be required to show that the allegations of the complaint established consent as a matter of law." *Shah v. Fandom, Inc.*, 754 F.Supp.3d 924, 931 (N.D. Cal. 2024). Defendant fails to meet its burden. For example, Defendant offers no support for its contention that Plaintiffs in fact consented to its Privacy Notices. *See* MTD at 19. Further, whether Plaintiffs voluntarily disclosed their PHI and PII to Defendant for purposes of treatment is irrelevant to whether Plaintiffs consented to the Third Parties' interception of their PHI and PII because consent is "limited to the specific conduct authorized." *Javier v. Assurance IQ, LLC*, No. 4:20-CV-02860-JSW, 2021 WL 940319, at *2 (N.D. Cal. Mar. 9, 2021). In other words, Plaintiffs' voluntarily disclosure of their PHI and PII ***to Defendant*** does not mean they consented to the Third Parties' interception. *See Shah*, 754 F.Supp.3d at 932; FAC ¶¶ 120-21, 137, 143, 146, 154, 158 (alleging that Plaintiffs did not consent to the Third Parties' interception). Defendant's reliance on *Kurowski v. Rush Sys. for Health*, 2023 WL 2349606, at *4 (N.D. Ill. Mar. 3, 2023) is of no avail because it relates to the inapplicable "party exception" under the ECPA, as discussed above. Moreover, Defendant omits that the plaintiffs in *Kurowski* successfully alleged the crime-tort exception upon amending the complaint. *See Kurowski v. Rush Sys. For Health*, 2023 WL 8544084, at *3 (N.D. Ill. Dec. 11, 2023) ("*Kurowski II*").

## III. PLAINTIFFS STATE A CLAIM FOR VIOLATION OF THE CMIA

Defendant makes various arguments against Plaintiffs' CMIA claim, but they all fall short.

First, Defendant argues that Plaintiffs have not alleged a CMIA claim because they "fail to plead that they are *patients* of Grow Care." MTD at 20. Defendant is wrong. Plaintiffs allege they: (1) are Defendant's patients (FAC ¶ 164); and (2) they booked "various appointments" with Defendant and used Defendant's therapy service for months. *Id.* ¶¶ 45, 49.

Second, Defendant argues Plaintiffs "fail to plead . . . that any of their *patient* medical information was transmitted to third parties." MTD at 20. Defendant's argument fails.

The CMIA states that a "provider of health care . . . shall not disclose medical information regarding a patient of the provider of health care . . . without first obtaining an authorization." Cal. Civ. Code § 56.10(a). "'Medical information' means any individually identifiable information, in electronic or physical form . . . regarding a patient's medical history, *mental health application information*, *mental* or physical *condition*, or *treatment*." Cal. Civ. Code § 56.05(i) (emphasis added). California courts have interpreted the CMIA to require disclosure of individually identifiable information that has a substantive medical treatment nexus. *See, e.g.*, *Colleen M. v. Fertility & Surgical Assocs. Of Thousand Oaks*, 132 Cal. App. 4th 1466, 1472 (2005). Here, Plaintiffs have done so by alleging the transmission of information regarding a medical condition, treatment, or history, that reveals the *nature* of the treatment. *See id.*

In *St. Aubin v. Carbon Health Technologies, Inc.*, 2024 WL 4369675, at *9 (N.D. Cal. Oct. 1, 2024), the court addressed factually similar circumstances, where the information allegedly disclosed included *appointment booking information* revealing the medical treatment the patient sought. There, the court found that allegations were sufficient to constitute PHI under the CMIA. *Id.* at *10 ("Regardless of whether the technologies were inside a patient portal, or whether they were on the appointment page, the question is whether the transmission of a URL containing the nature of the appointment constitutes medical information. The Court finds that it does.").

Plaintiffs' allegations here sufficiently show Defendant disclosed their PHI when booking an appointment, including "the type of care for which patients booked appointments (*e.g.*, talk therapy); [and] [] the type of specialty care for which patients sought care [*e.g.* anxiety]." FAC ¶ 140. Like in *St. Aubin*, this appointment-booking information constitutes PHI because it contains the "nature of the appointment." 2024 WL 4369675, at *10.

Defendant argues that Plaintiffs' allegations do not "reveal[] that Plaintiffs actually received the purported services they booked, let alone anything about their patient medical histories, mental or physical conditions, or treatments. If anything, it reveals only that Plaintiffs scheduled appointments with certain types of therapists." MTD at 21. Importantly, the allegations Defendant claims are missing from the FAC are not required under the CMIA. Medical information under Cal. Civ. Code § 56.05(i) (emphasis added), includes, "mental [] condition, or treatment." Here, the

information Defendant disclosed resulted from Plaintiffs' booking of mental health services. *See* FAC ¶¶ 45, 49. As such, the information relates to Plaintiffs' mental condition and treatment. *See* Cal. Civ. Code § 56.05(j). That is, the disclosed information reveals: (1) that Plaintiffs have the mental-health conditions of "anxiety and depression" (FAC ¶¶ 45, 49); and (2) the treatment Plaintiffs received, *i.e.*, mental health "talk therapy." *Id.* ¶ 166. Even if Plaintiffs had not received talk-therapy treatment, which they did (FAC ¶¶ 45, 49, 164), because Defendant disclosed Plaintiffs' mental health conditions (anxiety and depression), Defendant disclosed their medical information.

Defendant's reliance on *Wilson v. Rater8, LLC*, 2021 WL 4865930, at *5 (S.D. Cal. Oct. 18, 2021), and *Cousin v. Sharp Healthcare*, 681 F.Supp.3d 1117, 1123-24, 1128 (S.D. Cal. 2023) (MTD at 21), is misplaced. Unlike in *Wilson* where the plaintiff made conclusory allegations of receiving treatment without describing what the treatment was, *see* 2021 WL 4865930, at *5, here, Plaintiffs specify they booked mental health therapy for treating anxiety and depression. FAC ¶¶ 45, 49.

Similarly, in *Cousin*, the plaintiffs' allegations that they searched for medical specialists on the website did not reveal anything "specific[] to Plaintiffs' health." 681 F. Supp. 3d at 1123. Defendant fails to mention that the court in *Cousin v. Sharp Healthcare*, 702 F.Supp.3d 967, 976 (S.D. Cal. 2023) ("*Cousin II*") ultimately did find the plaintiffs' allegations to be sufficient. Here, similarly, Plaintiffs' allegations reveal specific facts about Plaintiffs' health – namely, the specific mental conditions for which they sought mental health treatment. FAC ¶¶ 45, 49. Accordingly, Plaintiffs sufficiently allege Defendant's disclosure of their PHI.

<u>Third</u>, Defendant argues Plaintiffs failed to allege "that any of their information was actually released to and viewed by a third-party." MTD at 21. Defendant is wrong, as courts in this Circuit have found that allegations similar to Plaintiffs' are sufficient. *See St. Aubin*, 2024 WL 4369675, at *10-11 (finding that the plaintiff sufficient alleged viewing where the plaintiff alleged that: (1) "the business models for Facebook and Google use the information gathered from the [defendant's] Website for targeted advertising"; (2) "after collecting and intercepting the information, Facebook processes it, analyzes it, and assimilates it into relevant datasets"; (3) "Google uses the data to personalize content ads on Google and partners' sites"; and (4) "after scheduling an appointment for her COVID-19 vaccine, Plaintiff received advertisements relating to COVID-19 vaccination"); *Doe*

*v. Regents of Univ. of California*, 672 F.Supp.3d 813, 819 (N.D. Cal. 2023); *see also Cousin II*, 702 F.Supp.3d at 975.

Here, Plaintiffs' allegations and the reasonable inferences therefrom are sufficient to show that the Third Parties viewed Plaintiffs' medical information. *See* FAC ¶ 46 ("As a result of Defendant's unlawful conduct, Plaintiff Doe 1 received digital advertisements related to Grow Therapy on social media platforms."); *id.* ¶ 50 (same); *id.* ¶ 73 ("That information is then analyzed by Datadog before being provided to any entity that was a party to the conversation (like Defendant)."); *id.* ¶ 75("ability to collect and analyze consumer's web behavior and deliver that data to present and future customers, who use that data for targeted advertising and product optimization"); *id.* ¶ 84 ("Defendant aids Twilio [in] intercepting users' sensitive communications with Grow Care through the Segment API so Twilio can better target its marketing campaigns."); *id.* ¶ 90 ("That information is then analyzed by Twilio before being provided to any entity that was a party to the conversation (like Defendant)."; *id.* ¶ 103 ("That information is then analyzed by Wingify before being provided to any entity that was a party to the conversation (like Defendant)."); *id.* ¶ 104 ("Wingify's services are based on its ability to collect and analyze consumer's web behavior and deliver that data to present and future customers, who use that data for targeted advertising, product optimization, and ultimately, monetization."). In order to perform the tasks described in the above-cited allegations, the Third Parties necessarily had to view the information.

Notably, while Defendant relies on the unpublished state court decision in *Barbour v. John Muir Health*, 2023 WL 2618967, at *7-8 (Cal. Super. Ct. Jan. 5, 2023) (MTD at 21), the court in *Carbon Health* explicitly found the *Barbour* reasoning "unpersuasive." *St. Aubin*, 2024 WL 4369675, at *11. Further, *Regents of Univ. of Cal. v. Superior Court*, 220 Cal.App.4th 549, 564 (2013), relied on by Defendant (MTD at 21), is irrelevant because it discusses the "release" standard under section Cal. Civ. Code § 56.36, which the court itself noted was "not synonymous with 'disclose' under section 56.10" at issue in this case. *Vigil v. Muir Med. Grp. IPA, Inc.*, 84 Cal.App.5th 197, 215 (2022) (MTD at 21), makes the same distinction between the disclosure versus release standard, and therefore, does not change the conclusion.

Fourth, Defendant argues that Plaintiffs failed to allege "that the defendant affirmatively intended to disclose the plaintiff's protected information to an unauthorized third party." MTD at 21-22. According to Defendant, Plaintiffs "fail to show that any of Plaintiffs' medical information was actually improperly disclosed" or that "Grow Care affirmatively intended for the [Trackers]" to disclose PHI. MTD at 21-22. Defendant's argument is meritless.

When assessing the question of the defendant's "affirmative" disclosure of PHI, the court in *R.C. v. Sussex Publishers, LLC*, 2025 WL 948060 (N.D. Cal. Mar. 28, 2025), found that "Plaintiffs plausibly allege Defendant committed an affirmative communicative act when it shared information to Google by embedding Google Analytics code on its website without anonymization." *Id.* at *6. Here, Plaintiffs also plausibly allege Defendant committed an affirmative communicative act when it affirmatively disclosed Plaintiffs' PHI and PII to the Third Parties by intentionally implementing the Trackers on the Website, including on portions of the Website that include appointment booking forms. FAC ¶¶ 2, 50, 61, 80, 106. Plaintiffs even provide screenshots of computer code displaying how Defendant disclosed the data via the Website. *See* FAC ¶¶ 34, 47, 51, 107-118, 166.

Defendant's further argument that "Plaintiffs concede" the Trackers "may be 'customized' and configured to only disclose nonpersonal information" (MTD at 22) only supports Plaintiffs' argument that Defendant was able to avoid disclosure of its patient's PHI and PII, but failed to do so, as shown in the FAC. FAC ¶¶ 34, 47, 51, 107-118, 166. Defendant also points to its use of Trackers that "permit data sharing under HIPAA." MTD at 22. But this argument falls short because it is irrelevant that the Trackers have the capability of being used in accordance with HIPAA if Defendant failed to do so. *See* FAC ¶¶ 34, 47, 51, 107-118, 166. Moreover, Defendant's reliance on *Garcia v. Build.com, Inc.*, 2023 WL 4535531, at *6 (S.D. Cal. July 13, 2023), is inapposite because there, the court did not address a CMIA claim, but rather a CIPA claim.

Lastly, Defendant argues that Plaintiffs have failed to "allege a lack of consent for the alleged disclosures" because the FAC: (1) "fails to mention Grow Care's Privacy Notices"; (2) fails to mention whether "Plaintiffs read [the Privacy Notices]"; and (3) fails to mention that the link to the Privacy Notices are on "*every* page of the website." MTD at 22. It is not Plaintiffs' burden to allege lack of consent. Plaintiffs must only allege the disclosure occurred without Defendant "first

obtaining an authorization," which Plaintiffs have alleged. Cal. Civ. Code § 56.10(a); *see* FAC ¶¶ 168-70.

Even if Plaintiffs were required to allege lack of consent, the Privacy Notice link Defendant references would not be enough to establish consent because it is located at the very bottom of the Website, and Website users are in no way required to engage with it, let alone provide affirmative consent to it, to use the Website. Thus, the link is non-binding browsewrap and does not provide Plaintiffs' consent to Defendant's disclosure of their PHI and PII. *See Price v. Carnival Corp.*, 2024 WL 221437, at *4-5 (S.D. Cal. Jan. 19, 2024) (citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014)); *Cody v. Ring LLC*, 718 F.Supp.3d 993, 1000 (N.D. Cal. 2024) ("Ring fails to cite any cases in which merely having a privacy policy online is sufficient to show consent"). Accordingly, Plaintiffs state a claim under the CMIA.

## IV. PLAINTIFFS STATE INVASION OF PRIVACY CLAIMS

As set forth in § III, above, Plaintiffs have alleged Defendant disclosed their PHI and PII without authorization. It follows that Plaintiffs have sufficiently alleged: (1) they had a reasonable expectation of privacy over this sensitive information (*see* FAC ¶¶ 175, 182); and (2) that the disclosure/interception was a highly offensive intrusion. *Id.* ¶¶ 177, 184; *see, e.g.*, *St. Aubin*, 2024 WL 4369675, at *12-13; *Ambry Genetics Data Breach Litig.*, 567 F.Supp.3d 1130, 1143 (C.D. Cal. 2021); *see also Doe v. Beard*, 63 F.Supp.3d 1159, 1170 (C.D. Cal. 2014).

Defendant argues Plaintiffs' claims for invasion of privacy under the California Constitution and common law should be dismissed because Plaintiffs: (1) failed to allege "that any of the purported disclosures from the Website would be understood or linked to *Plaintiffs'* specific health or condition"; (2) "fail to allege facts showing that any of that information was improperly disclosed to a third party"; (3) failed to "adequately allege a lack of consent"; and (4) improperly sought monetary damages. MTD at 23-24. Defendant's arguments fail.

<u>First</u>, Defendant's argument that the Website disclosures may not be understood to be information related to Plaintiffs ignores that Plaintiffs allege, that along with the PHI disclosed, Defendant also disclosed users' PII, such as their "insurance member ID number, full legal name, phone number, and email address." FAC ¶¶ 49, 50. That is, Plaintiffs allege that Defendant's

disclosures are linked to the person seeking mental health treatment. Notably, with respect to Plaintiffs, they allege that they booked appointments for their own mental health treatment. *Id.* ¶¶ 45, 49.

*Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 955 (N.D. Cal. 2017) (MTD at 23), is distinguishable because that case related to the disclosure of "non-actionable 'general health information,'" as opposed to specific medical information of an identifiable individual. Moreover, *Low v. Linkedin Corp.*, 900 F.Supp.2d 1010 (N.D. Cal. 2012) (MTD at 23), is distinguishable because, unlike here, in that case, the plaintiff failed to "allege facts establishing a serious invasion of privacy or an invasion that is highly offensive to a reasonable person." *Low*, 900 F.Supp.2d at 1025. As discussed, Plaintiffs allege that the disclosures at issue involved Plaintiffs' medical information, meaning it was highly offensive. *See St. Aubin*, 2024 WL 4369675, at *12-13; *Ambry*, 567 F.Supp.3d at 1143; *see also Beard*, 63 F.Supp.3d at 1170.

Second, as discussed in Sections II and III, above, Plaintiffs plausibly allege their PHI and PII were disclosed to, and/or intercepted by, the Third Parties. *Doe v. Amgen Inc.*, 2024 WL 575248 (C.D. Cal. Jan. 29, 2024) (MTD at 23), does not support Defendant's contrary position because there, the plaintiff provided conclusory allegations of the Meta Pixel's operation. *Amgen Inc.*, 2024 WL 575248, at *3. Here, Plaintiffs provide detailed explanations of the Trackers' workings and screenshots of how Defendant discloses/allows the Trackers to intercept PHI and PII. *See* FAC ¶¶ 61-105, 107-118. Likewise, *Graham v. Noom*, Inc., 533 F.Supp.3d 823, 832-33 (N.D. Cal. 2021) (MTD at 24), is inapposite because, unlike in that case, here, Plaintiffs have alleged interception and use of their communications. *See* Section II, above.

Third, as discussed in Section III, above, Defendant's "lack of consent" argument is unavailing and existence of consent is Defendant's burden to bear. *See Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal.4th 1, 40 (1994) (noting consent as one of defendant's available defenses to negate a constitutional privacy case). Furthermore, *Hammerling v. Google, LLC*, 2024 WL 937247, at *3 (9th Cir. Mar. 5, 2024) (MTD at 24), is also unavailing because Defendant fails to meet its burden to show that it even gave proper notice of the Privacy Policy. *See* Section III, above.

Fourth, Defendant argues that Plaintiffs cannot assert a private right of action for damages under the California Constitution and can only seek injunctive relief under that claim. MTD at 24. However, Plaintiffs do not seek monetary damages under the California Constitution, but merely "seek all relief available." FAC ¶¶ 178, 185. Therefore, the Court should not dismiss Plaintiff's claim under the California Constitution.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's motion to dismiss in its entirety. To the extent the Court finds that Plaintiffs have not sufficiently pleaded facts to establish that the Court may exercise specific personal jurisdiction over Defendant, Plaintiffs respectfully request leave to file an amended complaint and/or to conduct jurisdictional discovery. Further, to the extent the Court dismisses any count of the FAC, Plaintiffs respectfully request leave to file a Second Amended Complaint.

Dated: May 14, 2025

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Philip L. Fraietta*

Philip L. Fraietta (State Bar No. 354768)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7408
Facsimile: (212) 989-9163
E-mail: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Ines Diaz Villafana (State Bar No. 354099)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: idiaz@bursor.com

**DRURY LEGAL, LLC**
Scott R. Drury (State Bar No. 355002)
6 Carriage Lane
Highwood, Illinois 60040
Telephone: (312) 358-8225

E-mail: scott@drurylegal.com

*Attorneys for Plaintiffs and the Putative Class*