Amy P. Lally (SBN 198555)
alally@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: (310) 595-9662

Ian M. Ross (admitted *pro hac vice*)
iross@sidley.com
SIDLEY AUSTIN LLP
1001 Brickell Bay Drive, Suite 900
Miami, FL 33131
Telephone: (305) 391-5218

Sarah E. Gallo (SBN 334455)
sgallo@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-7490

*Attorneys for Defendant*
*Grow Care, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JANE DOE 1 and JANE DOE 2, individually and on behalf of all other persons similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GROW CARE, INC.,<br><br>Defendant. | Case No. 5:24-cv-09122-NW<br>Assigned to: Hon. Noël Wise<br><br>**DEFENDANT GROW CARE, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Date: July 30, 2025<br>Time: 9:00 a.m.<br>Place: Courtroom 3, 5th Floor<br><br>Amended Complaint Filed: March 5, 2025 |

# TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. Plaintiffs Fail to Establish Personal Jurisdiction over Grow Care. ..... 2

1. The Ninth Circuit's Decision in Briskin Should Not Alter the Court's Conclusion That Defendant Has Not Purposefully Directed its Activities Toward California. ..... 3

2. Plaintiffs' Claims Do Not Arise From or Relate to Defendant's California Conduct. ..... 6

3. Exercising Jurisdiction Would Be Unreasonable and Unfair. ..... 8

B. Plaintiffs' First Amended Complaint Fails to Plead a Plausible Claim for Relief. ..... 10

1. Plaintiffs' ECPA and CIPA Claims Must Be Dismissed (Counts I & II). ..... 10

2. Plaintiffs' CMIA Claims Must Be Dismissed (Count III). ..... 12

3. The Invasion of Privacy Claims Must Be Dismissed (Counts IV & V). ..... 14

III. CONCLUSION ..... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AMA Multimedia, LLC v. Wanat*,
970 F.3d 1201 (9th Cir. 2020) ....................3

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................13

*B.K. v. Eisenhower Med. Ctr.*,
2024 WL 878100 (C.D. Cal. Feb. 29, 2024) ....................10

*Barbour v. John Muir Health*,
2023 WL 2618967 (Cal. Super. Ct. Jan. 5, 2023) ....................12

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ....................13

*Beltran v. Doctors Med. Ctr. of Modesto*,
2025 WL 1635467 (E.D. Cal. June 9, 2025) ....................14

*Briskin v. Shopify, Inc.*,
135 F.4th 739 (9th Cir. 2025) .................... *passim*

*Cole v. Quest Diagnostics, Inc.*,
2025 WL 88703 (D.N.J. Jan. 14, 2025) ....................11

*Crim. Prods., Inc. v. Doe*,
2016 WL 6581850 (S.D. Cal. Nov. 7, 2016) ....................5

*Diamond S.J. Enter., Inc. v. City of San Jose*,
2018 WL 5619746 (N.D. Cal. Oct. 29, 2018) ....................8

*Doe v. Amgen, Inc.*,
2024 WL 575248 (C.D. Cal. Jan. 29, 2024) ....................15

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ....................11

*Ford Motor Co. v. Montana Eighth Judicial District Court*
592 U.S. 351 (2021) ....................6, 7

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Group*,
905 F.3d 597 (9th Cir. 2018) ....................9

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ....................15

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) ....................5

*Incorp Services Inc. v. Incsmart.Biz Inc.*
2012 WL 3685994 (N.D. Cal. Aug. 24, 2012) ....................6

*Javier v. Assurance IQ, LLC*
2021 WL 940319 (N.D. Cal. Mar. 9, 2021)....................12

*Katz-Lacabe v. Oracle America, Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ....................10

*Lakes v. Ubisoft, Inc.*,
2025 WL 1036639 (N.D. Cal. Apr. 2, 2025) ....................12, 15

*Lopez v. Apple, Inc.*
519 F. Supp. 3d 672 (N.D. Cal. 2021) ....................11

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
647 F.3d 1218 (9th Cir. 2011) ....................3

*Mikulsky v. Bloomingdale's LLC*,
2024 WL 3091395 (S.D. Cal. May 14, 2024)....................11

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ....................10

*R.C. v. Sussex Publishers*, *LLC*
2025 WL 948060, at *6 (N.D. Cal. Mar. 28, 2025)....................13

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) ....................11

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. Cal. May 21, 2021) ....................10

*Roe v. Amgen Inc.*,
2024 WL 2873482 (C.D. Cal. June 5, 2024) ....................10

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ....................6

*Silver v. Stripe Inc.*,
2021 WL 3191752 (N.D. Cal. July 28, 2021)....................15

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) ....................14, 15

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024)....................12

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
802 F. Supp. 2d 1125 (C.D. Cal. 2011) ....................................................................2

*United States v. Fisher*,
2019 WL 3310508 (D. Nev. Mar. 28, 2019) report and recommendation adopted as modified, 2019 WL 2419456 (D. Nev. June 10, 2019), *aff'd*, 56 F.4th 673 (9th Cir. 2022) ....................................................................5

*Walden v. Fiore*,
571 U.S. 277 (2014)....................................................................7

*Yamashita v. LG Chem, Ltd.*,
62 F.4th 496 (9th Cir. 2023) ....................................................................7, 8

**Statutes**

18 U.S.C. §§ 2510(1), (4), (8) (Federal Wiretap Act ("ECPA")) ..........................................10, 11

Cal. Pen. Code § 631....................................................................11

Health Insurance Portability and Accountability Act ("HIPAA")..........................................2, 13

Defendant Grow Care, Inc. ("Grow Care" or "Defendant") respectfully submits this Reply in support of its Motion to Dismiss ("Motion") Plaintiffs' First Amended Complaint ("FAC").

## I. INTRODUCTION

Plaintiffs Jane Doe 1 and Jane Doe 2's ("Plaintiffs") Opposition to Defendant's Motion (the "Opposition") misses the mark twice—first on jurisdiction, then on the merits.

On personal jurisdiction, Plaintiffs rely almost exclusively on the Ninth Circuit's recent decision in *Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025). But this reliance is misplaced. Briskin sued Shopify, the very creator of the online tools at issue. Shopify permanently installed cookies on Briskin's device that allowed Shopify to monitor and track Briskin's physical location and online shopping activity. Critically, Shopify conceded that it *knew before* installing cookies that Briskin's device was in California. And the court found that Shopify's business model was to obtain and market consumer data to other merchants for its own commercial gain. The Ninth Circuit "conclude[d] that jurisdiction is proper because Shopify's allegedly tortious actions deliberately targeted Briskin in California: (1) Shopify concedes that its geolocation technology allowed it to know that Briskin's device was located in California when it installed cookies on Briskin's device; and (2) the complaint alleges that Shopify uses the data gathered by its cookies to compile consumer profiles and then sells them without the consumer's knowledge or consent." *Id.* at 746.

In contrast, Plaintiffs here have not sued the creators of the online tools at issue. They do not allege that Grow Care permanently installed software on their devices. Rather, their allegations are limited to tools that operated on Grow Care's website (the "Website"). There is no allegation that Grow Care knew Plaintiffs' location at any time during their Website visit. There is no allegation that Grow Care obtained information about anyone other than its own consumers (in accordance with its privacy policy) nor that Grow Care's business model is to market consumer data externally.

Plaintiffs' faulty analogies to *Briskin* undermine their claim that Grow Care has purposefully directed activities at California. In arguing their claims arise from Grow Care's California conduct, Plaintiffs inaccurately argue that Grow Care installed trackers on their devices—something they never alleged—and fail to address Defendant's key arguments, namely, that Plaintiffs' injuries are too attenuated from Defendant's contacts with California-licensed providers to "arise out of or relate to"

them. Finally, unlike Shopify, Grow Care has argued compelling reasons why litigating in California would be unfair and unreasonable. Thus, the FAC should be dismissed for lack of personal jurisdiction.

Second, Plaintiffs' substantive privacy claims go nowhere. They fail to provide specific facts demonstrating any invasion of privacy or "highly offensive" conduct. The FAC reveals only routine use of standard business tools, properly disclosed on the Website in full compliance with HIPAA and the CMIA. Plaintiffs repeatedly insist their information was shared without consent but implicitly concede they were expressly directed to Grow Care's Privacy Notices disclosing its partnership with the third-party service providers—without alleging they did not read these disclosures. And Plaintiffs' bare assertions that through their use of the Website, they quality as "patients" under the CMIA fall flat. Further, by failing to respond to Grow Care's arguments that their California-specific privacy claims can't support a nationwide class, Plaintiffs concede that argument.

The Court should thus dismiss the FAC in its entirety, with prejudice.

## II. ARGUMENT

### A. Plaintiffs Fail to Establish Personal Jurisdiction over Grow Care.

Plaintiffs cannot carry their burden on any prong of the specific-jurisdiction test. First, Grow Care did not purposefully direct its conduct at California: unlike Shopify in *Briskin*, there are no allegations that Grow Care permanently installs proprietary tracking software on users' devices or had advance knowledge that any Website user's device was located in the state. Second, Plaintiffs' alleged privacy injuries do not "arise out of or relate to" Grow Care's California contacts; they stem from Plaintiffs' choice to access the Website. Despite Plaintiffs' argument in their Opposition, the Complaint nowhere alleges—because it did not occur—that Grow Care implanted trackers on Plaintiffs' devices. Plaintiffs' injuries cannot arise from these mischaracterized contacts. Third, unlike Shopify, Grow Care has shown that litigating in California would be unreasonable and unfair. Taken together, these defects defeat personal jurisdiction and require dismissal.[1]

[1] In its Motion, Grow Care contended that California lacked general jurisdiction over it because it is incorporated in Delaware and has its principal place of business in New York, and thus is not "essentially at home" in California. Br. at 5. Plaintiffs did not address general jurisdiction in their opposition, thereby conceding the issue. *See Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue").

### 1. The Ninth Circuit's Decision in Briskin Should Not Alter the Court's Conclusion That Defendant Has Not Purposefully Directed its Activities Toward California.

Both Parties agree that a defendant purposefully directs its activities toward a particular forum when it has: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Opp. at 9 (citing *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011)). Plaintiffs argue that *Briskin* overrules any requirement for a "forum-specific focus" or "differential targeting" of the forum at issue for a finding of "express aiming" as set forth in *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201 (9th Cir. 2020). Opp. at 10. However, Plaintiffs' attempt to apply *Briskin* to this case fails because their Opposition focuses on how the third-party tool providers (Datadog, Twilio and Wingify) purportedly interact with and direct their activities toward the state. Stated differently, Plaintiffs may get the law right, but their application of these facts to *Briskin* ranges from strained to incorrect, and they fail to explain how Grow Care purposefully directed its activities toward California under *Briskin*.

In *Briskin,* the court concluded jurisdiction was proper because Shopify's alleged tortious conduct deliberately targeted the plaintiff in California. 135 F.4th at 746. Key to the court's decision was the fact that Shopify's business model was predicated on monetizing ***third-party data*** collected with its ***own software*** using allegedly permanently installed tracking tools on California consumer devices, which differs entirely from Grow Care's business model. *Id.* The decision did not concern, as is the case here, the conduct of a website operator allegedly employing ***third-party analytical tools*** to obtain data about its ***own customers and not for monetization.*** Further, Shopify was alleged to have "target[ed] California consumers" by placing software code placed on their devices to track shopping behavior across its merchant network, aggregating this data into detailed profiles, and selling these profiles to third parties, including California merchants. *Id.* at 755-56, 762. The court determined that Shopify's sale of profile products, created from consumer data collected without disclosure or consent from devices it knew were located in California, was key to finding that Shopify purposefully directed its activities toward California and that exercising jurisdiction in the state was fair. *See id.* at 756.

In contrast to Shopify in *Briskin*, Grow Care's business model does not center on tracking

consumers' activities on known California devices and then creating, marketing, and selling detailed consumer profile products derived from such information. Rather, it concerns a defendant whose core business is developing and operating an online platform connecting independent therapists and clients to facilitate access to mental health care. *See* FAC ¶¶ 1, 52. Plaintiffs have not alleged let alone provided evidence that Grow Care is in the business of selling or marketing consumer data for its own commercial gain. In fact, Plaintiffs do not allege Grow Care obtained information about any internet users other than its own consumers, in accordance with the terms of its privacy policy. The mere existence of common third-party analytics or advertising software tools on a website, without more, does not transform a web-based mental health services platform into a data broker or constitute the type of systematic, profit-driven exploitation of consumer data that was dispositive in *Briskin*.

Next, Plaintiffs' briefing generates similarities between Shopify and Grow Care by ignoring that Grow Care did not create the tools that Plaintiffs allege are embedded in its Website and enabled viewing of their data. *Briskin* does not support this approach. The Ninth Circuit in *Briskin* expressly relied on Shopify's purposeful conduct—installing its ***own tracking code*** directly on known California users' devices to collect and monetize data; it did not rely on the mere presence of third-party code on a nationally-accessible website. *Briskin*, 135 F.4th at 746 (holding "jurisdiction is proper because Shopify's allegedly tortious actions deliberately targeted *Briskin* in California," highlighting that "the complaint alleges that Shopify uses the data gathered by its cookies to compile consumer profiles and then sells them without the consumer's knowledge or consent"). Put simply, the *Briskin* plaintiffs sued Shopify, the creator of the online tools underlying their claims; by contrast, the Plaintiffs here have not sued the creators of the tools at issue, and the *Briskin* reasoning does not apply. Thus, it is not, as Plaintiffs insist, "clear that Defendant 'expressly aimed its conduct at California through its extraction, maintenance, and commercial distribution of the California consumers' personal data in violation of California laws.'" Opp. at 12. Plaintiffs' attempt to extend *Briskin* here to a passive website operator based solely on the use of a third-party's tracking code on its website is unsupported by the decision and contrary to established principles of personal jurisdiction.

Finally, Plaintiffs' perfunctory comparisons to *Briskin* assume the third-party software allegedly embedded in the Website functions identically to Shopify's, ignoring that (1) unlike in

*Briskin*, where Shopify allegedly installed tracking cookies on users' devices, Plaintiffs here do not allege Grow Care installed anything on their devices, and (2) critically, Shopify conceded in *Briskin* it knew plaintiffs' locations *before* collecting any data—unlike here. The *Briskin* court repeatedly stressed that Shopify's purposeful direction and express aiming at California were predicated on Shopify's use of geolocation technology to identify California residents "either prior to or shortly after installing its initial tracking software onto their devices." *Briskin*, 135 F.4th at 746, 756. This concession was central to the court's finding that Shopify's conduct was deliberately targeted at California and thus supported the exercise of specific personal jurisdiction. *Id*.

Unlike Shopify, Grow Care neither conceded nor was alleged to have installed cookies on Plaintiffs' devices that identified visitors as California-based prior to any alleged third-party data collection. The FAC does not allege when geolocation data is collected nor allege that tool providers send any individual-level geographic information to Grow Care. *See* FAC ¶¶ 13-17, 62-105. Further, the FAC does not allege that Grow Care knows that users of its Website are in California before or at the same time that the allegedly embedded third-party tools collect a user's website activity. *See id.*

The FAC pleads only that the Website's tracking technologies "may derive" information about users' locations from IP addresses. FAC ¶ 14. But even if Plaintiffs alleged Grow Care has access to IP addresses, IP addresses are imprecise, dynamic, and easily masked by VPNs (virtual private networks) or other anonymizing tools. *See Crim. Prods., Inc. v. Doe*, 2016 WL 6581850, at *2 (S.D. Cal. Nov. 7, 2016) (concluding that an IP address did not reveal defendant's location with sufficient specificity for the purposes of establishing jurisdiction over defendant); *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1191–1192 (N.D. Cal. 2020) (noting that it would require "considerably more than the collection of IP addresses" to determine a user's precise location); *United States v. Fisher*, 2019 WL 3310508, at *3 (D. Nev. Mar. 28, 2019), 2019 WL 2419456 (D. Nev. June 10, 2019), *aff'd*, 56 F.4th 673 (9th Cir. 2022) (explaining that the use of a VPN will obscure the true IP address and identity of the user). Thus, IP addresses do not precisely or reliably reveal a user's physical location.

Because there is no allegation or evidence that Grow Care installed cookies that permitted it to ascertain the location of Website visitors ***prior to*** the third-party tools' alleged collection of data, the critical element of knowledge and targeting of California residents central to *Briskin* is absent here.

Without this, there is no basis for finding purposeful direction or express aiming at California, and specific personal jurisdiction cannot be established.

Finally, Plaintiffs claim that Grow Care "purposefully directed" its conduct at California by contracting with California-licensed providers to serve the state's residents in compliance with local law. Opp. at 12. But Plaintiffs take this argument too far. Grow Care's contacts, even if "intentional, non-random, or fortuitous," did not "result in" the data-privacy violations alleged in the FAC. *Id.* Plaintiffs' "random, isolated, and fortuitous" phrase comes from *Ford Motor Co. v. Montana Eighth Judicial District Court*, which cuts the other way: even where a defendant has reached out beyond its home, a forum may assert jurisdiction only when the plaintiffs' claims, "arise out of or relate to" the defendant's forum contacts. 592 U.S. 351, 362 (2021). Plaintiffs cannot meet that test.

***Foreseeable Harm.*** Grow Care's Motion clearly emphasizes that Plaintiffs plead no facts tying Grow Care's California-facing conduct to the alleged third-party disclosure of their data, so they cannot show that Grow Care knew any injury was likely to be suffered in the state. Mot. at 20 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 803 (9th Cir. 2004)). Plaintiffs again invoke *Briskin* but do not explain how it shows their alleged harm was a foreseeable result of Grow Care's California conduct; notably, *Briskin* never analyzed this point as defendants conceded it. Opp. at 14; 135 F.4th at 756. Plaintiffs' citation to *Incorp Services Inc. v. Incsmart.Biz Inc.* backfires because it emphasizes Plaintiff's burden to show harm in California was a foreseeable consequence of Defendant's intentional acts. *See* Opp. at 14 (citing 2012 WL 3685994, at *8 (N.D. Cal. Aug. 24, 2012)). Plaintiffs still do not explain how the alleged California harm—the disclosure of their health information by third-party service providers—was a foreseeable consequence of Grow Care's contracts with California-licensed mental health providers (in compliance with state licensing laws), or its "surreptitious conduct" related to the tracking software (which, as discussed above, is the conduct of the third-party tool providers and not Grow Care, and is plainly disclosed in its Terms). *See* Opp. at 14. Here, Plaintiffs' scattershot citations fall well short of the showing the Ninth Circuit requires.

**2. Plaintiffs' Claims Do Not Arise From or Relate to Defendant's California Conduct.**

Grow Care's Motion made two simple points. First, Plaintiffs, and any other California

customers of Grow Care, chose—on their own—to visit the Website; their claims therefore cannot rest on "contacts defendant himself create[d] with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Second, Grow Care's contracts with California-licensed therapists are too remote from the acts that allegedly injured Plaintiffs. Plaintiffs counter by citing *Ford Motor Co.* and *Briskin*, but their cursory analysis misstates both law and facts, undermining their efforts to establish jurisdiction.

Under *Ford Motor Co.*, a claim can satisfy jurisdictional requirements if it "'arise[s] out of or relate to the defendant's contacts with the forum.'" 592 U.S. at 362 Plaintiffs correctly note Ford's dual approach—requiring either causation or a substantial relationship to forum contacts without strict causation. *Id*. *Briskin* applies *Ford*, holding jurisdiction existed under either the "arises" or "relates to" standard because Shopify intentionally installed software on devices it knew were in California, and because Briskin alleged the type of injury "that would 'tend to be caused' by Shopify's contacts with California merchants and consumers." *Briskin*, 135 F.4th at 760 (citing *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 505 (9th Cir. 2023)).

But Grow Care is still not Shopify. Shopify deliberately installed software on devices it knew were in California; Grow Care did not directly interact with or target Plaintiffs' devices. Plaintiffs argue Defendant's contacts with California are the same as Shopify's, and that "Defendant violated Plaintiffs' and class members' privacy rights by installing Trackers onto their devices in order to allow the interception and disclosure of their PII and PHI." Opp. at 15. However, the FAC alleges no facts stating that *Grow Care* installed *anything* on Plaintiffs' devices, and this assertion in the Opposition includes no citation or reference to any such allegation. *Id.* Plaintiffs argue these California contacts of Defendant—that they have never before alleged and have no basis—"would tend to cause privacy injuries." *Id.* (citing *Briskin*, 135 F.4th at 760). New allegations raised in an Opposition brief do not suffice to meet *Ford's* "arises out of or relates to" standard to confer jurisdiction.

Plaintiffs advance no arguments regarding any other specific California contacts of Defendant, thereby ceding to Defendant's arguments in its Motion that the purported harms suffered by Plaintiffs neither arise out of, nor relate to, Defendant's contacts with California-licensed mental health providers or any alleged "consumer base" for Defendant's platform in California. *See* Mot. at 21-22; *Diamond S.J. Enter., Inc. v. City of San Jose*, 2018 WL 5619746, at *4 (N.D. Cal. Oct. 29, 2018)

(holding that "an opposition brief's failure to address a motion to dismiss' challenges to a claim constitutes abandonment of that claim"). Nor could they: searching for a therapist in a given state does not prove that a person is located in the state while searching.

Finally, Defendant stands by its cited authorities. Plaintiffs' cursory attempt to distinguish *Yamashita* misstates the relevant standard: jurisdiction requires the plaintiff's harm arise from the defendant's contacts—not that the defendant's contacts arise from plaintiff's harm. *See* Opp. at 16 (citing *Yamashita*, 62 F.4th at 506). Moreover, *Yamashita* strongly supports a finding that Plaintiffs have not adequately pled that their injuries arise out of or relate to Grow Care's California contacts. Even if Plaintiffs had argued their harm arose out of Defendant's contacts with California-licensed therapists, their purported privacy injuries are, like in *Yamashita*, not the kind that would "tend to be caused" by a website's hiring licensed therapists in California. *See id.* at 505-06 (holding that plaintiffs product liability claims related to defendant's batteries were not of the kind that would "tend to be caused" by the defendant shipping those batteries through the Port of Honolulu).

**3. Exercising Jurisdiction Would Be Unreasonable and Unfair.**

Plaintiffs challenge Grow Care's assertion that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice. But Plaintiff again relies on *Briskin*—a case in which Shopify did not even contest the reasonableness of exercising jurisdiction in California. Opp. at 9-10 (citing *Briskin*, 135 F.4th at 761). Here, Grow Care has made a detailed, fact-based showing that California jurisdiction would be unfair *and* unreasonable. Mot. at 23-24. Plaintiffs' argument fails.

Once a plaintiff establishes the first two prongs of the specific jurisdiction test—purposeful direction and claims arising out of forum-related conduct—the burden shifts to the defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Briskin*, 135 F.4th at 751. In *Briskin*, Shopify failed to claim any significant burden, conflict of sovereignty, or inefficiency, and did not dispute California's strong interest in enforcing its privacy laws. *Id.* at 761. Its only argument on unreasonableness was the abstract concern of facing suit in multiple states, which the court rejected given Shopify's extensive California operations. Indeed, *Briskin* shows that Shopify, a global e-commerce platform with a substantial California presence—including a physical store, thousands of California merchants, and a business model centered on

California consumers—did not and could not credibly argue that defending a suit in California would be unduly burdensome or unfair. *Id.* at 777. The Ninth Circuit found no "compelling case" against jurisdiction because Shopify's own business choices made California a natural and fair forum.

Plaintiffs' element-by-element contesting of Defendant's arguments under the *Ayla* factors is undercut by its reliance on the inapposite *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Group*, 905 F.3d 597 (9th Cir. 2018). *Freestream* highlights the tenuous connection here between Grow Care and California. There, the Ninth Circuit upheld Nevada jurisdiction only because the defendant's lawyer flew to Las Vegas, spoke at an aviation conference, and repeated the allegedly defamatory statements at the center of the litigation on Nevada soil, thereby committing the very tort in the forum state — conduct the panel called the paradigmatic "purposeful interjection" that naturally supports jurisdiction. 905 F.3d at 601-02, 607. It then deemed any burden of litigating in Nevada "barely" significant, stressing that the defendants already did business nationwide and that "'modern advances in communications and transportation have significantly reduced the burden of litigating in another forum.'" *Id*. at 608 (citation omitted). Finally, Nevada's "strong interest in adjudicating matters involving intentional torts committed within the State" tipped the seven-factor fairness test in the plaintiff's favor, the court concluding the factors were "at best, a wash" for the defense. *Id*. at 609.

Grow Care presents the opposite profile: it has no physical presence in California, operates a uniform nationwide website, is incorporated in Delaware with headquarters in New York, and most of its relevant witnesses and records are on the East Coast—making cross-country litigation burdensome and California's interest minimal. Those facts erase the linchpins that drove the result in *Freestream* and confirm that exercising personal jurisdiction here would offend the "fair play and substantial justice" requirement that *Freestream* itself underscores. *Id*. at 603.

Moreover, Grow Care has made a detailed, fact-based showing that jurisdiction in California would be unreasonable. *See* Mot. at 23-24. As a Delaware LLC headquartered in New York, Grow Care emphasized the burdens of litigating far from its home, the lack of California-specific targeting, the minimal connection to California beyond the Plaintiff's residence, and the existence of more appropriate alternative forums (New York or Delaware). Thus, unlike Shopify, Grow Care's arguments are grounded in the realities of its business and the practical burdens of out-of-state

litigation, making its challenge to jurisdiction both substantial and compelling. This key distinction supports granting Grow Care's motion to dismiss.

### B. Plaintiffs' First Amended Complaint Fails to Plead a Plausible Claim for Relief.

#### 1. Plaintiffs' ECPA and CIPA Claims Must Be Dismissed (Counts I & II).

***Failure to Plead Crime-Tort Exception.*** Grow Care argues it cannot be liable under the ECPA because the statute requires only one party's consent, and Plaintiffs allege that Grow Care consented to the installation of the Datadog, Twilio, and Wingify analytical tools (the "Tools") on its Website. Mot. at 25. Plaintiffs counter that the crime-tort exception to the one-party consent rule applies because, they claim, Grow Care violated several California statutes. Opp. at 19. Yet Plaintiffs fail to adequately allege that Grow Care acted with the ***intent or purpose*** necessary to trigger this exception.

As Grow Care argued at the outset, Plaintiffs have not alleged "sufficient facts to show that the primary motivation or a determining factor in the interceptor's actions has been to injure plaintiffs tortiously," a requirement for the crime-tort exception. *Katz-Lacabe v. Oracle America, Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (quotation marks omitted); *B.K. v. Eisenhower Med. Ctr.*, 2024 WL 878100, at *5 (C.D. Cal. Feb. 29, 2024) (same). Plaintiffs sidestep this point, asserting instead that "the crime-tort exception applies when a defendant acted for monetary gain if the 'plaintiffs have adequately alleged that the defendant's conduct violated state law, including [] privacy claims.'" Opp. at 19 (quoting *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901 (C.D. Cal. 2024)). But courts in this Circuit disagree on that issue, and the more persuasive view is that financial motivation alone does not trigger the crime-tort exception. *See Roe v. Amgen Inc.*, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024) (dismissing plaintiffs' ECPA claim under the one-party consent provision against a website operator alleged to have embedded tracking pixels to disclose plaintiffs' confidential medical information for targeted advertising, reasoning that the "crime-tort exception is inapplicable where a defendant's primary motivation is to make money rather than to injure plaintiffs tortiously or criminally"); *Katz-Lacabe*, 668 F. Supp. 3d at 945 (defendant's "'purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money'") (quoting *Rodriguez v. Google LLC*, 2021 WL 2026726, at *6 n.8 (N.D. Cal. May 21, 2021)). Because Plaintiffs fail to show tortious intent, their ECPA claim should be dismissed.

***Failure to Plead an Intentional Interception of a Communication.*** Further, Plaintiffs fail to rebut Defendant's assertion that the FAC fails to adequately allege the "(1) intentional (2) interception of (3) the contents of a communication," the requirement for their wiretap claims under both the ECPA and CIPA. *See* Mot. at 26 (citing 18 U.S.C. §§ 2510(1), (4), (8); Cal. Pen. Code § 631).

First, Plaintiffs fail to adequately plead that Grow Care intended the Tools intercept their communications. As set forth in Grow Care's Motion, Plaintiffs allege only Grow Care's intent that the Tools record browsing activity, which is distinct from ***content*** and not actionable. *See* Mot. at 26-27 (citing *Mikulsky v. Bloomingdale's LLC*, 2024 WL 3091395, at *3 (S.D. Cal. May 14, 2024)). Plaintiffs try to compare this case to *Lopez v. Apple, Inc.*, where the court found adequate intent allegations because Apple deliberately forwarded accidental Siri recordings to contractors to resolve a problem with the software. *See* 519 F. Supp. 3d 672, 684 (N.D. Cal. 2021). Grow Care, by contrast, allegedly embedded simply routine analytical tools on its Website to analyze browsing activity. Plaintiffs' reliance on *Lopez* highlights the weakness of their allegations.

Second, Plaintiffs cite several cases, none of which addresses Grow Care's main argument: that the Tools did not intercept communications because they were parties to those communications (as clearly disclosed in Grow Care's Privacy Policy). Plaintiffs themselves allege the Tools collect user information directly, even before Grow Care receives it. *See, e.g.*, FAC ¶ 90. Plaintiffs' reliance on *Ribas v. Clark*, 38 Cal. 3d 355, 358 (1985), involving an individual secretly listening in on a private phone call, is not analogous to a clearly disclosed web-based tool. Likewise, *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020), has nothing relevant to say about their ECPA claim. The most relevant recent decision is *Cole v. Quest Diagnostics*, *Inc.,* 2025 WL 88703, at *2 (D.N.J. Jan. 14, 2025), which dismissed similar claims precisely because users' browsers ***directly*** transmitted information to third-party servers. Likewise, here, Plaintiffs' allegations, taken as true, allege a direct browser-to-third-party communication, not an interception. *See, e.g.*, FAC ¶¶ 107-120.

Third, Plaintiffs miss the point on their consent to the purported disclosures. Plaintiffs allege they provided their personal information directly to Grow Care, knowing Grow Care would use that information for specific purposes. FAC ¶¶ 45, 49. They further allege Grow Care's Privacy Notices disclose the use of the Tools. *Id.* ¶¶ 14-17. They cite *Javier v. Assurance IQ*, *LLC,* which dismissed

similar claims because the plaintiff had knowingly supplied information to a website and agreed to a privacy policy that disclosed data collection. *See* 2021 WL 940319, at *2-*3 (N.D. Cal. Mar. 9, 2021). By the same logic, Plaintiffs' own allegations confirm they knew Grow Care collected—and would analyze—their information through these Tools. Plaintiffs' own allegations and cited cases undercut their claim of ***unauthorized*** interception. *Lakes v. Ubisoft, Inc.*, 2025 WL 1036639, at *6 (N.D. Cal. Apr. 2, 2025) (dismissing privacy claims where "a reasonable user would understand from the Privacy Policy that he or she is consenting to the use of cookies including by third parties").

Finally, Plaintiffs do not address Defendant's arguments—and thus concede—the territorial limits of the CIPA claim. *See* Mot. at 28.

**2. Plaintiffs' CMIA Claims Must Be Dismissed (Count III).**

As set forth in Grow Care's Motion, Plaintiffs have not sufficiently alleged that Grow Care disclosed their "patient information," that any such information was actually viewed by an unauthorized person, or that Grow Care affirmatively intended to disclose such information. Mot. at 28-30. Plaintiffs' Opposition does not cure these deficiencies.

First, Plaintiffs' failure to plead a "release" of protected information to a third-party viewer (as required by CMIA's remedial provisions) is fatal to its claim. The Motion demonstrated that Plaintiffs' allegations are limited to the fact that the Tools ***can*** purportedly intercept data, but they do not clearly allege ***actual viewing*** by a third party. Mot. at 29. In other words, Plaintiffs allege the Tools record and analyze information, but never that "any human actually lay[s] eyes on it." *See Barbour v. John Muir Health*, 2023 WL 2618967, at *7-8 (Cal. Super. Ct. Jan. 5, 2023). Plaintiffs respond by relying on *St. Aubin*, which concerns the disclosure of patient information gathered from the Carbon Health website through social media pixels that purportedly intercept browser data and result in personalized ads on other websites. *See St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *10-11 (N.D. Cal. Oct. 1, 2024). But here, Plaintiffs are alleging that the Tools use the purportedly intercepted Website communications to refine their own services and report that data back to Grow Care. *See* FAC ¶¶ 77, 91, 105. Unlike *St. Aubin*, Plaintiffs do not plead beyond bare speculation that the Tools release their protected information in a manner that allows any ***third-party viewing or use***.

Plaintiffs ask the Court to infer, based on their allegations, that Plaintiff Doe 1's receipt of

digital advertisements related to Grow Therapy on social media platforms shows that third parties viewed her disclosed health information. Opp. at 25. But that conclusion requires making the unsupported and speculative inference that online advertisements for Grow Therapy could ***only*** have arisen from booking an appointment on the Website. Although allegations suffice at the motion to dismiss stage, mere conclusions and assertions are not "facts" entitled to the presumption of truth, and a plaintiff must provide "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Here, the FAC contains no factual allegations linking Plaintiff's alleged appointment to the advertisements she claims to have received—for example, by allegations the timing or content of the advertisements. Moreover, Plaintiff Doe 1 fails to allege whether she searched for therapy appointments through a general online search like Google, or visited other healthcare providers' websites, which could just as plausibly explain the presence of the targeted advertisements.

Second, Plaintiffs fail to show Grow Care affirmatively intended to disclose protected information to any third party. As explained in Defendant's Motion, Plaintiffs concede the Tools can be customized to disclose only nonpersonal data, and do not specifically allege that Grow Care intentionally set them up to improperly share protected information. Mot. at 30 (citing FAC ¶¶ 69 n. 26, 79, 99). While Plaintiffs argue the Tools were not configured to protect personal information, their allegations only indicate what data the Tools could potentially intercept, not how the Tools processed, or transmitted their data or whether such transmissions violated HIPAA. *See* Opp. at 26. The FAC notably lacks detail about whether Grow Care configured the Tools in compliance with HIPAA, ignoring the fact that Grow Care maintains Business Associate Agreements allowing HIPAA-compliant data sharing with vendors providing the Tools. Mot. at 30. Instead, Plaintiffs rely on generalized comparisons to cases involving Meta and Google Pixels, overlooking critical differences between those trackers and Grow Care's Tools. Opp. at 26. Plaintiffs cite *R.C. v. Sussex Publishers, LLC*, a Pixel-related case involving non-anonymized Google Analytics code, but do not allege here that Grow Care similarly neglected to anonymize data before it was allegedly accessed by any third party. 2025 WL 948060, at *6 (N.D. Cal. Mar. 28, 2025). Plaintiffs' vague conjecture alone does not demonstrate Grow Care had affirmative intent to disclose.

Third, Plaintiffs' strained argument that they did not consent to the disclosures is no more convincing here. Plaintiffs' allegation that "Defendant fails to obtain its patients' authorization for the disclosure of medical information to Wingify and Twilio in the manner prescribed pursuant to [the] CMIA" is misleading; the FAC does not allege Plaintiffs were unaware of Grow Care's Privacy Notices disclosing use of the Tools that are linked on every page of the Website. *See* FAC ¶ 168.

Finally, Plaintiffs' cursory response fails to establish they qualify as "patients" under the CMIA. Simply asserting that they booked appointments and "used [Grow Care's] services" is insufficient—Plaintiffs must plausibly allege how, under the CMIA's specific definition, they are *patients* whose *patient information* was disclosed. *See* Mot. at 28; Opp. at 22. *See also Beltran v. Doctors Med. Ctr. of Modesto*, 2025 WL 1635467, at *9 (E.D. Cal. June 9, 2025) (dismissing Plaintiffs' CMIA claim in part because searches for information related to certain medical conditions and providers who treat them do not alone constitute a patient's medical information).

**3. The Invasion of Privacy Claims Must Be Dismissed (Counts IV & V).**

As Grow Care emphasized in its Motion, Plaintiffs have not plausibly alleged that any information disclosed by the Website revealed or could be linked to their specific health conditions, was improperly shared with third parties, or was disclosed without consent. Mot. at 31–32. Plaintiffs' Opposition does not bridge these gaps. This forecloses their common law claims.

In its Motion, Defendant argued that Plaintiffs' allegations failed to meet the high bar for an invasion of privacy claim because California courts have held that disclosure of "general health information" unrelated to a specific individual does not suffice, and "none of Plaintiffs' allegations show that any of the purported disclosures from the Website would be understood or linked to *Plaintiffs'* specific health or condition." Mot. at 31 (citing *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954-55 (N.D. Cal. 2017)) (emphasis in original). Plaintiffs respond by asserting that they booked their own appointments, and that they also input personal identification information into the form including their insurance member ID, name, phone number, and email address. Opp. at 27-28. But Plaintiffs do not connect the dots. Plaintiffs fail to explain *how* their provision of this information into the Website directly results in their loss of privacy. Arguing the existence of the Tools on the Website is not enough without specifically alleging and explaining how they analyze and/or disclose this

information in an unlawful way. Plaintiffs' weak attempt at distinguishing *Smith*, stating that *Smith* concerned the disclosure of "non-actionable 'general health information,'" without explaining what that term meant in the context of the case and how it differs from the information purportedly disclosed here, does not further their argument either. *See* Opp. at 28.

Plaintiffs also fail to specifically and adequately allege that Grow Care improperly disclosed their information to any third party. *See supra* II.B.3; Mot. at 31–32. Plaintiffs' attempt to distinguish *Amgen* is unpersuasive. They dismiss *Amgen*'s directly relevant holding—which dismissed similar privacy claims due to vague allegations regarding the presence and configuration of the Meta Pixel—as conclusory, asserting that their own allegations are sufficiently detailed. Opp. at 28 (citing *Doe v. Amgen, Inc.*, 2024 WL 575248, at *3 (C.D. Cal. Jan. 29, 2024)). But Plaintiffs do not adequately allege how the Tools enabled improper viewing of their data by third parties. Plaintiffs' attempt to distinguish *Noom*—by asserting, without adequate support, that they have sufficiently alleged interception whereas the plaintiffs in *Noom* did not—is similarly unconvincing. Opp. at 28 (citing *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832-33 (N.D. Cal. 2021)) Defendant maintains that Plaintiffs have not adequately alleged interception, undermining their arguments here. *See supra* II.B.1.

Similarly, for the reasons discussed previously, *see supra* II.B.3., Plaintiffs' own allegations demonstrate that they consented to the purported disclosures, and thus cannot pursue common law privacy claims. *See Silver v. Stripe Inc.*, 2021 WL 3191752, at *2 (N.D. Cal. July 28, 2021) (consideration of consent is appropriate on a motion to dismiss); *see Lakes*, 2025 WL 1036639, at *6 (privacy policy simply needs to disclose the use of third-party cookies, as case law "do[es] not require a more granular disclosure").

Finally, as with their CIPA claims, Plaintiffs do not address and thus concede the territorial limits of their privacy claims for out-of-state class members. *See see supra* II.B.1., Mot. at 32.

## III. CONCLUSION

For the foregoing reasons, Grow Care respectfully requests that this Complaint be dismissed for lack of personal jurisdiction; and, because the FAC's deficiencies cannot be cured by amendment, Grow Care respectfully requests that the Court dismiss Plaintiffs' claims with prejudice.

Date: June 11, 2025

SIDLEY AUSTIN LLP

By: */s/ Amy P. Lally*
Amy P. Lally
Ian M. Ross (admitted *pro hac vice*)
Sarah E. Gallo

*Attorneys for Defendant Grow Care, Inc.*